James G. Hunt, Esq.
Hunt Law Firm
310 E. Broadway St.
Helena MT 59601
Phone: (406) 442-8552
Facsimile: (406) 495-1660
jhunt@huntlaw.net

Greg Munro, Esq.
3343 Hollis Street
Missoula MT 59801
Phone: (406) 493-5361
greg.munro@umontana.edu
        *Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| BITCO GENERAL INSURANCE CORPORATION, | CV-18-87-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| J. BURNS BROWN CO., | |
| Defendant. | |

Defendant J. Burns Brown Operating Co. ("JBBOC") submits this Brief in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 in its favor and against Plaintiff BITCO General Insurance Corporation's ("BITCO").

///

# TABLE OF CONTENTS

I.     BACKROUND ...................................................................6

II.    ISSUE ..............................................................................7

III.   SUMMARY OF ARGUMENT ......................................8

IV.    STATEMENT OF MATERIAL FACTS NOT IN CONTROVERSY ..........9

V.     SUMMARY JUDGMENT STANDARD .......................9

VI.    LAW APPLICABLE TO INSURANCE POLICIES ....................9

    A.   STANDARD OF REVIEW FOR INSURANCE POLICY CONTRACTS ...............9

    B.   THE PURPOSE OF COMMERCIAL UMBRELLA POLICIES .........................11

    C.   THE MEANING OF THE TERM "FOLLOW FORM" ...................................11

VII.   THE APPLICABLE INSURANCE POLICIES ...........................12

    A.   THE RISKS FOR WHICH THE INSURANCE WAS PROCURED .......................12

    B.   THE BITCO PROGRAM, GENERALLY ...................................13

    C.   THE BITCO PRIMARY POLICY (CGL) ...................................13

    D.   THE BITCO UMBRELLA POLICY .........................................14

    E.   THE FOLLOW FORM ...........................................................15

VIII.  ARGUMENT ...................................................................16

    A.   IN THE CONTEXT OF THE BITCO PROGRAM, THE PLAIN LANGUAGE OF THE BITCO UMBRELLA POLICY PROVIDES COVERAGE AND THE FOLLOW FORM DOES NOT LIMIT COVERAGE FOR THE SPILL. .................16

        1.   The BITCO Primary Policy's Pollution Endorsement is "underlying insurance." .............................................17

2.      The Pollution Endorsement is Provided by Coverage Listed "at the limits shown on the Schedule of Underlying Insurance." ......................................................18

3.      The *Marjo* Case...................................................................20

B.      ALTERNATIVELY, THE BITCO PROGRAM IS AMBIGUOUS AND THE BITCO UMBRELLA POLICY MUST BE CONSTRUED IN JBBOC'S FAVOR TO PROVIDE COVERAGE FOR THE SPILL .....................................21

1.      The Follow Form's Reference to Non-Existent "COVERAGE D" Creates Ambiguity. .....................................22

2.      Use of the Term "Follow Form" in and of itself Creates an Ambiguity .............................................................24

3.      BITCO's Failure to Include the Pollution Endorsement on the Schedule of Underlying Insurance Creates an Ambiguity...........................25

4.      *Marjo* Evidences Ambiguity......................................................26

C.      IF THE TERMS OF THE FOLLOW FORM PRECLUDED COVERAGE, THEY WOULD VIOLATE THE INSURED'S REASONABLE EXPECTATIONS ............26

IX.     CONCLUSION.................................................................................29

CERTIFICATE OF COMPLIANCE .........................................................29

CERTIFICATE OF SERVICES ...............................................................30

## LIST OF EXHIBITS

AFFIDAVIT OF SANDRA BROWN.........................................................7

# TABLE OF AUTHORITIES

*Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of America,*
 3 F. Supp 3d 865, 871 (D Mont. 2014)....................................................27

*Bayou Steel Corporation v. National Union Fire Ins. Co. of Pittsburgh,*
*Pennsylvania,* 642 F.3d 506, 509 (5 CA 2011) .......................................11

*BITCO Gen. Ins. Corp. v. Marjo Operating Co., Inc.*, 2016 U.S. Dist. LEXIS
92083 (W. Dist. Okla., July 15, 2016) (order vacated 2017 U.S. Dist. LEXIS
158228; cited pursuant to Fed. R. App. P. 32.1) .....................8-9, 18, 20-21, 26, 28

*C.B. Fleet Company, Inc. v. Aspen Insurance UK Limited,*
743 F.Supp. 2d 575, 584 (W.D. Pennsylvania 2010) ..............................12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................9

*EMJ Corp. v. Hudson Specialty Ins. Co.*, 90 F. Supp. 3d 644, 653
(N.D. Mississippi, Delta Div. 2015) .........................................................11

*Enron Oil Trading & Transport. Co. v. Underwriters of Lloyd's of London
Under Policy No. 552/020129100*, 47 F. Supp. 2d 1152 (D. Mont. 1996) .............10

*Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*,
666 F.3d 384, 388 (CA 6th 2011) ..............................................................11

*F.H. Stoltze Land & Lumber Co. v. American States Ins. Co.,* 2015 MT 165,
379 Mont. 409, 352 P.3d 612......................................................................10, 19

*Fire Insurance Exchange v. Tibi*, 51 F. Supp. 2d 1065, 1070 (fn.9)
(D. Mont. 1995) .........................................................................................10, 19

*Home Ins. Co. v. American Home Products Corp.*,
902 F.2d 1111, 1113 (2nd Cir. 1990).......................................................12

*In Re HealthSouth Corp*., 308 F. Supp. 2d 1253, 1282
(N.D. Alabama, Southern Div. 2004) ......................................................12

*James v. Chicago Title ins. Co.*, 2014 MT 325, ¶ 10,
377 Mont. 264, 268, 339 P.3d 420, 424.....................................................27

*Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*,
2017 MT 246, ¶ 10, 389 Mont. 48, 53, 403 P.3d 664, 668......................................27

*Lincoln County Port Authority v. Allianz Global Risk U.S. Ins. Co*.,
2013 MT 365, ¶ 17, 373 Mont. 60, 64, 315 P.3d 934, 938................................10, 12

L.R. 56.1(c) ...................................................................................................................9

*Marie Deonier & Associates v. Paul Revere Life Ins. Co.*
2000 MT 238, ¶ 45, 301 Mont. 347, 360, 9 P.3d 622, 630............................ 9, 27-28

MCA § 28-3-301 *et seq.*.....................................................................................10, 19

MCA §§ 33-15-333 to 340......................................................................................22

*National Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Company, Inc*.,
272 F. Supp 3d 1099, 1103 (fn. 5) (D. Minn. 2017)..................................................11

*National Union Fire Ins. Co. v. Ready Pac Foods, Inc.*,
782 F. Supp. 2d 1047, 1053 (Cen. Dist. Of Cali., March 18, 2011 ........................24

*North Pacific Ins. Co. v. Stucky*, 986 F. Supp.2d 1207, 1209 (D. Mont. 2013)........9

*O'Connell v. Liberty Mut. Fire Ins.,* 43 F. Supp. 3d 1093, 1096 (D Mont. 2014)..10

*Schleusner v. Continental Cas. Co., 102 F. Supp. 3d 1148* (D. Mont. 2015),
appeal dismissed (9th Cir. 15-35448),
motion for relief from judgment denied (2015 U.S. Dist. LEXIS 63454) ..............10

*State Farm Mut. Auto. Ins. Co. v. Braun,* 243 Mont. 125, 129-130
793 P.2d 253, 255-6 (1990) .....................................................................................28

*Stonehocker v. Gulf Insurance Company, et.al.,* 2016 MT 78, ¶15
383 Mont. 140, 144, 368 P.3d1187, 1191................................................................27

*Ticknor v. Rouse Enterprises, LLC,* 2 F. Supp. 3d 882, 889
(E.D. Louisiana 2014)..............................................................................................12

*Transamerica Ins. v. Royle*, 202 Mont. 173, 180-1, 656 P.2d 820, 824 (1983)......28

# I.  BACKGROUND

JBBOC operates oil and gas properties in northcentral Montana with an office in Havre, Montana.  Doc. 38 at ¶ 1; Doc. 38-2 at 4. BITCO is an insurer specializing in providing insurance for coal entities, oil operators, heavy industry, etc.  BITCO markets these products as an insurance "Program," tailored to cover the particular risks of the types of businesses BITCO insureds operate.[1]  When BITCO offered the BITCO Program to JBBOC, it knew JBBOC's business to be "oil/gas lease operations." Doc. 38-2 at 3.

The determination of this matter turns on the following parts of the BITCO Program sold to JBBOC:

- A Commercial General Liability Policy ("BITCO Primary Policy"), Doc. 38-2);

- The Contamination or Pollution Coverage endorsement ("Pollution Endorsement"), Doc. 38-2 at 44-45; Doc. 38 at ¶ 17;

- The BITCO Umbrella Policy Declarations ("Umbrella Declarations") and its Schedule of Underlying Insurance, Doc. 38-3 at 6;

- Coverage A of the BITCO Umbrella Policy, Doc 38-3 at 8;

- The BITCO Umbrella Policy's definitions of "retained limit" and "underlying insurance," Doc. 38-3 at 30-31; and

---

[1] www.bitco.com/programs ("An insurance policy is only effective if it takes into account the real world aspects of the business it is created to protect. At BITCO, we get to know the ins and outs of your operation so we can anticipate the hazards you face and create a unique policy to safeguard you.")

- the BITCO Umbrella Policy Pollution Exclusion – Follow Form
  ("Follow Form"), Doc 38-3 at 40.

In the ordinary course of JBBOC's business, a crude oil discharge (the "Spill") occurred and was discovered in March 2017, on a JBBOC site. Doc. 38 at ¶¶ 2-16. The State of Montana, Department of Environmental Quality, demanded JBBOC perform clean-up and remediation of the Spill.  Doc. 38-1. [2]  BITCO accepted coverage and indemnified JBBOC for this spill under the BITCO Primary Policy.  Doc. 38 at ¶ 20. The Pollution Endorsement aggregate limit of $100,000 was exhausted to pay for some of the clean-up costs. Doc. 38 at ¶ 22.[3]  JBBOC requested pollution coverage under the BITCO Umbrella Policy.  BITCO refused and filed its Complaint for Declaratory Judgment. Doc. 01.

## II.    ISSUE

Whether BITCO has a duty under the BITCO Umbrella Policy to defend and indemnify JBBOC for the Spill.

---

[2] Doc. 38-1, the Notice of Violation from the Montana Department of Environmental Quality, is addressed to Mr. John Brown in Havre, Montana.  Mr. Brown was killed in a plane crash in 2007 and his widow, Sandra Brown, has been operating JBBOC since then.
[3] JBBOC used the $100,000 Pollution Endorsement proceeds to pay contractors to clean up the spill.  As of May 2019, the total cleanup costs were in excess of $1.3M and additional work is anticipated.  Other than the $100,000 from BITCO, JBBOC has not been able to pay the contractors for the cleanup work.  Ex. 1.

## III.  SUMMARY OF ARGUMENT

As explained below, JBBOC is entitled to summary judgment because: (1) the plain language of the BITCO Program must be interpreted to provide coverage under the BITCO Umbrella Policy for the Spill; (2) alternatively, the BITCO Program is ambiguous and must be construed against BITCO in favor of JBBOC; and (3) denial of coverage violates the reasonable expectations of JBBOC, and is thus violative of public policy.

Further, it is evident the BITCO Program has cobbled together various forms neither designed nor intended to be combined. The result is a Frankenstein policy rife with internal conflict, confusion, and ambiguities.

Notably, a federal district court in the Western District of Oklahoma found coverage under a BITCO umbrella policy with the same issue, substantively similar facts, and the same policy language as found here.  *BITCO Gen. Ins. Corp. v. Marjo Operating Co., Inc.*, 2016 U.S. Dist. LEXIS 92083 (W. Dist. Okla., July 15, 2016) (cited pursuant to Fed. R. App. P. 32.1).[4]  The *Marjo* Court's consideration of the very policy terms at issue *sub judice* is instructive and is

---

[4] After the Federal District Court entered its order against BITCO and in favor of Marjo, the parties settled the case.  As part of the settlement, the parties agreed to ask the Court to vacate its Order finding the BITCO umbrella policy provided coverage for cleanup costs.  The Court granted the Joint Motion for Vacatur and vacated its Order and Judgment against BITCO. 2017 U.S. Dist. LEXIS 158228. Therefore, this case is cited pursuant to Fed. R. App. P. 32.1.

addressed more fully below.  In summary, the Court ruled that it was "evident the parties intended for BITCO to defend Marjo under the Umbrella Policy against any claim covered by the Pollution Policy once Marjo exhausted coverage." *Id.*

## IV.  STATEMENT OF MATERIAL FACTS NOT IN CONTROVERSY

Pursuant to L.R. 56.1(c), the facts have been agreed upon by the Parties and are found in the Statement of Stipulated Facts.  Doc. 38.  JBBOC will rely upon these facts in its arguments.

## V.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the Court finds (1) there is no genuine material issue of fact, and (2) the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## VI.   LAW APPLICABLE TO INSURANCE POLICIES

### A.   STANDARD OF REVIEW FOR INSURANCE POLICY CONTRACTS

*North Pacific Ins. Co. v. Stucky*, explains that Montana law is applied in a case like this:

> The law of Montana applies in this diversity jurisdiction case.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). In Montana, the interpretation of an insurance contract is a question of law. *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.*, 2000 MT 238, 301 Mont. 347, 9 P.3d 622, 630 (2000). The language of an insurance policy governs if it is clear and explicit. *Id.* Ambiguities are construed in favor of the insured and against the insurer. *Id.* Exclusions from coverage are narrowly and strictly construed "because they are contrary to the fundamental protective purpose of an insurance policy." *Id.* An ambiguity exists when an insurance contract taken as a whole is reasonably subject to

two different interpretations. *Jacobsen v. Farmers Union Mut. Ins. Co.*, 2004 MT 72, 320 Mont. 375, 87 P.3d 995, 997-98 (2004)(overruled on other grounds).

*Id.,* 986 F. Supp.2d 1207, 1209 (D. Mont. 2013).

The Court's inquiry is whether the term is ambiguous when viewed from the perspective of a consumer with average intelligence not trained in law or the insurance business. *Schleusner v. Continental Cas. Co., 102 F. Supp. 3d 1148* (D. Mont. 2015), appeal dismissed (9th Cir. 15-35448), motion for relief from judgment denied (2015 U.S. Dist. LEXIS 63454); *Enron Oil Trading & Transport. Co. v. Underwriters of Lloyd's of London Under Policy No. 552/020129100*, 47 F. Supp. 2d 1152 (D. Mont. 1996). A court must read the policy as a whole and, if possible, reconcile its various parts to give each meaning and effect. *Lincoln County Port Authority v. Allianz Global Risk U.S. Ins. Co.*, 2013 MT 365, ¶17, 373 Mont. 60. 64, 315 P.3d 934. 938; *O'Connell v. Liberty Mut. Fire Ins. Co.,* 43 F. Supp. 3d 1093, 1096 (D Mont. 2014). The insurance policy must be given an interpretation that is reasonable and consonant with the manifest object and intent of the parties. *Fire Insurance Exchange v. Tibi*, 51 F. Supp. 2d 1065. 1070, (fn. 9) (D. Mont. 1995); MCA 28-3-301 *et seq.*; *F.H. Stoltze Land & Lumber Co. v. American States Ins. Co.,* 2015 MT 165, ¶7, 379 Mont. 409, 413, 352 P.3d 612, 614.

### B.     THE PURPOSE OF COMMERCIAL UMBRELLA POLICIES

Umbrella policies are "parasitic" because they require the insured maintain

and exhaust an underlying primary policy.  *EMJ Corp. v. Hudson Specialty Ins.*

*Co.*, 90 F. Supp. 3d 644, 653 (N.D. Mississippi, Delta Div. 2015).  It is a condition

precedent to coverage under any umbrella policy for the insured to have an

underlying policy with the same coverage. One of the functions of an umbrella

policy is to provide for a higher limit of liability for those losses typically covered

by the CGL policy.  *Federal-Mogul U.S. Asbestos Personal Injury Trust v.*

*Continental Cas. Co.*, 666 F.3d 384, 388 (CA 6th 2011).

### C.     THE MEANING OF THE TERM "FOLLOW FORM"

At issue in this case is the interpretation of a "follow form" within the

context of the BITCO Program. The term "follow form" has significant meaning

when found in an insurance policy.  A "follow form" excess insurance policy

includes language stating it follows the same terms as an underlying policy,

including definitions, conditions, exclusions and endorsements.  *National Union*

*Fire Ins. Co. of Pittsburgh, PA v. Donaldson Company, Inc*., 272 F. Supp 3d 1099,

1103 (fn. 5) (D. Minn. 2017).  A "following form" excess policy incorporates by

reference all terms and conditions of the primary insurance.  *Bayou Steel*

*Corporation v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 642 F.3d

506, 509 (5 CA 2011).  Unless there is an express exception to the form of the

underlying insurance, the excess carrier in a follow-form policy must act in accordance with the underlying insurance policy's terms. *Ticknor v. Rouse Enterprises, LLC,* 2 F. Supp. 3d 882, 889 (E.D. Louisiana 2014); *In Re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1282 (N.D. Alabama, Southern Div. 2004). If there is an express exception to the terms of the underlying insurance, the excess policy will control. *C.B. Fleet Company, Inc. v. Aspen Insurance UK Limited,* 743 F.Supp. 2d 575, 584 (W.D. Pennsylvania 2010); *Home Ins. Co. v. American Home Products Corp.*, 902 F.2d 1111, 1113 (2nd Cir. 1990).

## VII.   THE APPLICABLE INSURANCE POLICIES

This brief examines BITCO's contractual obligations as set forth in the BICTO Primary Policy and the BITCO Umbrella Policy entered between the Parties. In the following paragraphs, JBBOC has necessarily analyzed the various provisions of each policy. However, the BITCO Program must be read as whole to give effect to its meaning. *Lincoln County Port Authority, supra.*

### A.   THE RISKS FOR WHICH THE INSURANCE WAS PROCURED.

As reflected by the coverage BITCO sold to JBBOC, there are three principle risks an oil and gas producer faces: (1) rupture or leakage of a crude oil pipe or vessel at the well sites, (2) liability arising from operation of company trucks or other vehicles, and (3) liability to non-employees for injury or death on

the company's well sites. JBBOC purchased the BITCO Program to cover those risks.

### B.   THE BITCO PROGRAM, GENERALLY

The BITCO Primary Policy and the BITCO Umbrella Policy are standard forms drafted by the Insurance Services Office (I.S.O.) in New York, the trade organization for property/casualty insurers in the U.S.  The policies were part of a package that included the BITCO Primary Policy issued on I.S.O. standard form CG 00 01 or 02 and its accompanying Declarations page, as well as a BITCO Umbrella Policy on I.S.O.'s standard form, CUP 00 05 01 10 and its accompanying Declarations page.

### C.   THE BITCO PRIMARY POLICY (CGL)

Effective September 2, 2017, the Parties renewed JBBOC's previous coverage under the BITCO Primary Policy.  While the Parties do not contest the BITCO Primary Policy covers the occurrence at issue, discussion of its relevant provisions is necessary because, as will be explained *infra*, the BITCO Umbrella Policy incorporates the BICTO Primary Policy as "underlying insurance."

Coverage A of the Primary Policy covers "property damage" that JBBOC is obligated to pay as damages.  Doc. 38-2 at 23. The Primary Policy's Exclusion 2.f. generally excludes pollution coverage. Doc. 38-2 at 25-26. However, the Pollution Endorsement JBBOC purchased provides pollution coverage in the amount of

$100,000.  Doc. 38-2 at 44-45.  Thus, in the BITCO Primary Policy, the Parties specifically contracted for, and concede to, coverage for property damage caused by the Spill as evidenced by BITCO's payment of $100,000 Pollution Endorsement coverage.  Doc. 38 at 22.

### D. THE BITCO UMBRELLA POLICY

There are various relevant provisions in the BITCO Umbrella Policy. BITCO's basic promise is found in "Coverage A, 1. Insurance Agreement" wherein it agrees to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' caused by an 'occurrence'…"  Doc. 38-3 at 8.  This is followed by a standard set of exclusions basically parallel to those of the BITCO Primary Policy with one notable exception—there is no pollution exclusion in the BITCO Umbrella Policy.  *See,* Doc. 38-3 at 7-14.

As explained below, the definition of "underlying insurance" is critical to the analysis here:

> [T]he coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy.  "Underlying Insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy. Such other insurance includes any policies issued to renew or replace these polices during the policy period of this insurance that provide: a.) At least the same limits of insurance; and b) at least the same coverage.

Doc. 38-3 at 31.  Based on these provisions in the BITCO Umbrella Policy, and before examining the Follow Form, the damage caused by the Spill is covered because pollution is covered under the Primary Policy, is not excluded under the Umbrella, and the Umbrella contains a broad promise to pay for covered losses after the underlying insurance limits are exhausted.

### E.    THE FOLLOW FORM

The BITCO Umbrella Policy has a Follow Form endorsement providing:

> It is agreed that this policy does not apply to:
> (1)    … "property damage" … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

Doc. 38-3 at 40.  However, the Follow Form endorsement has an exception to its exclusion that provides that if there is "underlying insurance," there is coverage for pollution:

> This exclusion does not apply if insurance for such … "property damage" … is provided by "underlying insurance" at the limits shown in the schedule of "underlying insurance."  Coverage for such … "property damage" … is subject to the same limitations as the "underlying insurance."

*Id*.

The "Schedule of Underlying Insurance" is found on the BITCO Umbrella Policy Declarations (Doc. 38-3 at 6) showing limits as provided by the "underlying insurance" in the BITCO Primary Policy.  The Schedule of Underlying Insurance, General Liability lists the General Aggregate limit of $2,000,000 and the Each

Occurrence limit of $1,000,000.  These are the same limits as the Primary Policy.

Doc. 38-2 at 21.  Significantly, the Pollution Endorsement is not listed in the

Schedule of Underlying Insurance or anywhere else in the BITCO Umbrella

Policy.

The Follow Form then attempts to limit the definition, and thus policy

coverage, of "underlying insurance":

> The definition of "underlying insurance" does not include insurance
> coverage afforded by:
>
> GENERAL LIABILITY – **COVERAGE D. – LIMITED
> POLLUTION COVERAGE;**

*Id*.  However, there is no Coverage D in the BITCO Primary Policy.[5]  Even more

confusing and ambiguous, the Pollution Endorsement does not reference or state it

provides "limited pollution coverage."  Therefore, this exclusion cannot apply to or

limit the pollution coverage provided by the BITCO Umbrella Policy.

## VIII.  ARGUMENT

### A.   IN THE CONTEXT OF THE **BITCO** PROGRAM, THE PLAIN LANGUAGE OF THE **BITCO** UMBRELLA POLICY PROVIDES COVERAGE AND THE FOLLOW FORM DOES NOT LIMIT COVERAGE FOR THE SPILL.

The BITCO Umbrella Policy, absent the Follow Form, clearly provides

coverage for the Spill, as pollution is not excluded in its policy terms and the

---

[5] The BICTO Primary Policy's "Quick Reference" (Doc. 38-2 at 10) identifies it as coverage form (CG 00 01 or CG 00 02).  "Coverage D–Limited Pollution Coverage" is not listed.

Primary Policy covers pollution. The Follow Form purports to exclude pollution

coverage but excepts then from application of its exclusion the circumstance where

there is "underlying insurance" such as undisputedly exists here.

### 1. The BITCO Primary Policy's Pollution Endorsement is "underlying insurance."

As demonstrated above, the Follow Form excepts from its pollution

exclusion[6] any pollution coverage provided by "underlying insurance" "at the

limits shown in the schedule of underlying insurance." Doc. 38-3 at 40. Thus, the

first question is whether the Pollution Endorsement in the BITCO Primary Policy

is "underlying insurance."

"[U]nderlying insurance" in the BITCO Umbrella Policy's has two

definitions. (Doc. 38-3 at 31). "Underlying insurance" is either (1) "designated" in

the Schedule of Underlying Insurance in the BITCO Umbrella Policy; or (2) "any

other insurance available to the insured."

Examining the Schedule of Underlying Insurance, the BITCO Primary

Policy is identified under "General Liability."  Because the Pollution Endorsement

---

[6] As discussed more fully in the alternative "ambiguity" section below, BITCO's choice to structure the Follow Form as an exclusion, with an exclusion to the exclusion, and then an exclusion to the exclusion to a non-existent exclusion (i.e., the reference to the non-existent Coverage D), makes it impossible for a consumer with average intelligence not trained in law or the insurance business to understand the meaning of the Follow Form in the context of the BITCO Umbrella Policy and the BITCO Program.

is an integral component of the BITCO Primary Policy, it cannot be considered apart from it.  Therefore, the first definition (1) of "underlying insurance" is satisfied because the Pollution Endorsement is "designated" by virtue of the reference to the BITCO Primary Policy.  See <u>Marjo, infra</u>.

Alternatively, if the Pollution Endorsement does not satisfy the first definition of "underlying insurance" because it is not "designated" in the Schedule of Underlying Insurance, the Pollution Endorsement is unquestionably "other insurance available to the insured" and the second definition of "underlying insurance" is met.  In either event, BITCO itself has already tendered the aggregate limit of pollution under its own Primary Policy.

### 2. The Pollution Endorsement is Provided by Coverage Listed "at the limits shown on the Schedule of Underlying Insurance."

The second requirement of the Follow Form is the "underlying insurance" must be a component of coverage as listed in the Schedule of Underlying Insurance at the limits shown in the schedule. As discussed above, the Schedule of Underlying Insurance (Doc. 38-3 at 6) specifically references the BITCO Primary Policy and its limits of $2,000,000 "General Aggregate" and $1,000,000 "Each Occurrence."  The Pollution Endorsement is an integral component of the BITCO Primary Policy and the "aggregate limit" of the BITCO Primary Policy is at the limits listed in the Schedule of Underlying Insurance. This is consistent with the $1,000,000 Umbrella Policy coverage and the purpose of umbrella coverage and

the insured's reasonable expectation that the umbrella will invariably provide substantially higher limits than the primary's pollution endorsement provided. Accordingly, the two-pronged requirement of the Follow Form is satisfied, which is the condition precedent to payment under the BITCO Umbrella Policy, according to its plain language.

If JBBOC had not purchased the Pollution Endorsement from BITCO, it could not argue it was entitled to pollution coverage under the BITCO Umbrella Policy absent an unambiguous exclusion, which the Umbrella Policy lacks. The Parties bargained for pollution coverage as an integral component of the BITCO Program. It would be counterintuitive to exclude from the Umbrella Policy the particular type of coverage for which JBBOC bargained to include in the BITCO Primary Policy. Such an outcome would essentially eliminate umbrella coverage for the Pollution Endorsement completely. This position is further enhanced considering various references to the limitations contained in the definition of "underlying insurance" and Montana's case law providing that contracts relating to the same matter (i.e., BITCO's insurance program for JBBOC, an oil/gas lease operator) are to be construed together when several contracts integrate or reference conditions of limitation from each other. *Fire Insurance Exchange v. Tibi*, *supra*; MCA 28-3-301 *et seq*.; *F.H. Stoltze Land & Lumber Co. v. American States Ins. Co., supra*.

For these reasons, Coverage A, in conjunction with the Follow Form, clearly evidence the Parties' intent for BITCO to indemnify JBBOC under the BITCO Umbrella Policy for any pollution property damage covered by the BITCO Primary Policy once JBBOC exhausted the coverage of "underlying insurance." It follows the BICTO Umbrella Policy covers the Spill to the limits of the Umbrella Policy.

The only defense BITCO could assert would be to claim the Umbrella Policy's various exclusions bar coverage. However, because BITCO has already indemnified JBBOC under the Primary Policy's Pollution Endorsement and the BITCO Umbrella Policy does not contain a pollution exclusion, such argument would be meritless.

### 3. The *Marjo* Case.

In *Marjo*, BITCO issued a CGL policy and a pollution policy to Marjo, an oil/gas lease operator. After exhausting the limits of the pollution policy, Marjo sought coverage under a BITCO umbrella policy. BITCO argued, as it does here, Marjo was not entitled to coverage based upon an identical "Pollution Exclusion – Follow Form" endorsement on the umbrella policy. Succinctly, the *Marjo* Court held:

> In the Court's view, coverage is available under the plain language of the Umbrella Policy, and is not excluded by that policy's Pollution Exclusion, as the Pollution Policy constitutes "underlying insurance" as that term is defined in the Umbrella Policy.
>
> As noted, "underlying insurance" has a two-pronged definition. It

encompasses either (1) coverage afforded under the policies designated on the Schedule of Underlying Insurance located on the Umbrella Policy's declarations page or (2) *any other* insurance that was available to the insured, with limited exceptions not relevant here. Both policies provided coverage for "property damage" due to incidents such as the leak. Although the Pollution Policy is not designated on the Schedule of Underlying Insurance, it nonetheless constituted "other insurance that was available to [Marjo]" at the time of the insurable incident. Reading both policies fairly, and applying a narrow reading to all exclusionary terms, it is evident the parties intended for BITCO to defend Marjo under the Umbrella Policy against any claim covered by the Pollution Policy once Marjo exhausted coverage.

*Id*., 2016 U.S. Disc. LEXIS 92083 at 5 (emphasis provided).

**B.   ALTERNATIVELY, THE BITCO PROGRAM IS AMBIGUOUS AND THE BITCO UMBRELLA POLICY MUST BE CONSTRUED IN JBBOC'S FAVOR TO PROVIDE COVERAGE FOR THE SPILL.**

It is evident from the cumbersome nature of these policies and their endorsements they were cobbled together out of existing I.S.O. forms neither drafted nor designed to be combined to create, together, the "BITCO Program." The net effect of this conglomeration is a Frankenstein-esque policy that is confusing, complicated and rife with ambiguities. Importantly, this Court's inquiry is whether a policy term is ambiguous when <u>viewed from the perspective of a consumer with average intelligence not trained in law or the insurance business</u>. *Supra.*

With that standard in mind, the following flow-chart represents application of the BITCO Program on the issue here:

- Primary Policy excludes pollution >

- Primary Policy Pollution Endorsement covers pollution >

- Primary Policy pollution limits exhausted >

- Umbrella Policy does not exclude pollution >

- Umbrella Policy Follow Form generally excludes pollution coverage >

- Umbrella Policy Follow Form covers pollution when it excepts "underlying insurance" pollution coverage from its exclusion >

- Umbrella Policy Follow Form states "Coverage D pollution coverage" in the Primary Policy is not "underlying coverage", but >

- There is no "Coverage D" in the Primary Policy.

This convoluted approach goes beyond the normal application of insurance terms and is a bi product of BITCO cobbling together various insurance products to create the BITCO Program.

Montana law establishes minimum language and formatting standards for property and casualty insurance policies to make them "easier to read." MCA 33-15-333 to 340.[7]  Montana law's requirement that there be a minimum level of readability in property and casualty policies is defeated by cobbling together

---

[7] BITCO recognized Montana law governs the BITCO Program.  For example, see endorsement, MONTANA CHANGES – CONFORMITY WITH STATUTES. Doc. 38-2 at 14.

several forms that do not fit together.  To the extent an insurer chooses to combine forms and such combination creates ambiguity, the risk must be on the insurer.

In addition to those discussed below, there are other internal components of the BITCO Program that create additional ambiguity. For instance, in "Section IV – Limit of Insurance" (Doc. 38-3 at 21), the limit of insurance does not include "'ultimate net loss' because of injury or damage arising from the automobile hazard." While this case does not involve "automobile hazard," the question arises as to whether the BITCO might argue the BITCO Umbrella Policy does not provide coverage beyond the automobile liability insurance coverage noted on the Schedule of Underlying Insurance.

### 1.   The Follow Form's Reference to Non-Existent "COVERAGE D" Creates Ambiguity.

A glaring example of the dissonance between the forms comprising the BITCO Program is the Follow Form's reference to "Coverage D" in the BITCO Primary Policy. After stating the pollution exclusion does not apply if there is "underlying insurance," the Follow Form states "'underlying coverage' does not include insurance coverage afforded by:  GENERAL LIABILITY – COVERAGE D. – LIMITED POLLUTION COVERAGE."   If an insured turned to the BITCO Primary Policy to find "COVERAGE D," the insured would find COVEREAGE D does not even exist in the BITCO Primary Policy. The fact the Pollution Endorsement is not referenced, and Coverage D does not exist creates, at a

minimum, ambiguity whether the Pollution Endorsement is "underlying insurance."  Therefore, the Follow Form is ambiguous, at best, as to whether it excludes pollution coverage.  Put simply, the Follow Form should not be used with an underlying Primary Policy that does not contain COVERAGE D.  It is incumbent upon BITCO to recognize that and the ambiguity must be imputed to it as the insurer.

## 2.   Use of the Term "Follow Form" in and of Itself Creates an Ambiguity.

As described *supra*, the term "Follow Form" has a specific meaning. As described by the United States District Court for the Central District of California interpreting California law (a sister jurisdiction from which Montana often looks for guidance when her own law on a subject has not been developed):

> [E]xcess insurance provides coverage only upon the exhaustion of specified primary insurance. A policy that incorporates the terms and conditions of another carrier's policy and provides the same scope of coverage as the underlying policy as "follow form" policy that covers only those damages covered by the underlying policy. Coverage for follow form policies is determined by evaluating whether the alleged damages are covered by the underlying policy.

*Nat'l Union Fire Ins. Co. v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1053 (Cen. Dist. of Cali., March 18, 2011) (internal citations omitted). Inclusion of the term "follow form" in the "Pollution Exclusion – Follow Form" communicates, on its face, that "if there was coverage in the underlying policy, there is coverage in the excess policy." This creates ambiguity with BITCO's interpretation of the

Follow Form, i.e., that the Follow Form eliminates coverage despite the fact that the underlying policy has been exhausted.

### 3. BITCO's Failure to Include the Pollution Endorsement on the Schedule of Underlying Insurance Creates an Ambiguity.

When JBBOC purchased the BITCO Primary Policy, it did not purchase a $1M/$2M CGL policy with a pollution exclusion. Rather, JBBOC purchased a $1M/$2M CGL policy with the Pollution Endorsement. That Pollution Endorsement is an integral component of the BITCO Primary Policy.

When BITCO listed the BITCO Primary Policy on the Schedule of Underlying Insurance, it omitted the Pollution Endorsement. As such, the Schedule of Underlying Insurance contains a falsity. In order to accurately reflect the insurance JBBOC purchased, the Schedule of Underlying Insurance must include reference to the Pollution Endorsement by listing it and its limits. BITCO's failure to do so creates an inaccuracy and ambiguity in the application of the critical components of the BITCO Program to JBBOC's detriment.  This very litigation is a result of BITCO's failure to accurately portray the coverage JBBOC purchased in the BITCO Umbrella Policy's Schedule of Underlying Insurance.

Had BITCO appropriately listed the Pollution Endorsement and its limits on the Schedule of Underlying Insurance, i.e., making the Schedule accurate and consistent with the actual coverages JBBOC purchased, it could not then argue that

the BITCO Umbrella Policy does not provide a duty to defend and indemnify for the Spill.

At best, BITCO's failure in this regard is an unintentional mistake—the bi-product of mixing and matching I.S.O. forms without regard to the ultimate result—that negatively impacts its insureds. At worst, BITCO's failure is careless neglect, given the fact knew or should have known these policies were problematic as explained in *Marjo.*  Either way, this Court must not condone an insurer's failure to accurately represent the integral components of interrelated policies, and then, in turn, use its failure as a basis to deny of coverage.

### 4.      *Marjo* Evidences Ambiguity.[8]

It is anticipated that BITCO will argue, consistent with the position it took in *Marjo*, that the Follow Form requires that the pollution coverage provided in the BITCO Primary Policy to be paid at a limit reflected in the Schedule of Underlying Insurance. *Arguendo*, we will presume for the sake of argument that BITCO's interpretation is reasonable.  The *Marjo* Court concluded the exact opposite. We must presume that a federal district court's interpretation of an insurance contract, after litigation and absent appeal, is *de facto* reasonable. Thus, we have two

---

[8] This argument is not meant to infer that *Marjo* is precedential here. Rather, it is simply included to show that, if one presumes BITCO's interpretation of the BITCO Program is reasonable, these exact insurance terms have historically been interpreted in two different yet reasonable ways.

different reasonable interpretations of identical policy language, which is, patently, the definition of ambiguity in the context of insurance.

> ### C.   IF THE TERMS OF THE FOLLOW FORM PRECLUDED COVERAGE, THEY WOULD VIOLATE THE INSURED'S REASONABLE EXPECTATIONS.

If the language of the BITCO Umbrella Policy and the Follow Form is interpreted to preclude coverage, then the provisions would be void as against public policy for violating the reasonable expectations of the insured.  The "reasonable expectations" doctrine provides that the objectively reasonable expectations of an insurance purchaser regarding the terms of a policy may be honored, even if a "painstaking study" of the policy would have negated those expectations.  *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2017 MT 246, ¶10, 389 Mont. 48, 53, 403 P.3d 664, 668; *James v. Chicago Title ins. Co.*, 2014 MT 325, ¶10, 377 Mont. 264, 268, 339 P.3d 420, 424; *Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of America,* 3 F. Supp. 3d 865, 871 (D Mont. 2014). Nevertheless, if the policy language is clear, the insured's contrary expectations will not be enforced.  *Id.*  In applying the reasonable expectations doctrine, the Court again interprets the insurance policy from the viewpoint of a consumer with average intelligence and not training in law or insurance.  *Stonehocker v. Gulf Ins. Co.*, 2016 MT 78, ¶15, 338 Mont. 140, 144, 368 P.3d 1187, 1191.  Exclusions from coverage are narrowly and strictly construed, because they are contrary to the fundamental protective purpose of an insurance policy.  *Marie Deonier &*

*Associates v. Paul Revere Life Ins. Co.*, 2000 MT 238, ¶45, 301 Mont. 347, 360, 9
P.3d 622, 630.

The Montana Supreme Court does not require ambiguity as a condition to
applying the reasonable expectations doctrine.  See, for example, *Transamerica
Ins. Co. v. Royle*, 202 Mont. 173, 180-181, 656 P.2d 820, 824 (1983); *State Farm
Mut. Auto. Ins. Co. v. Braun,* 243 Mont. 125, 129-130, 793 P.2d 253, 255-6 (1990).

BITCO's "program" for providing well-site pollution coverage is confusing.
BITCO takes advantage of the confusion by meeting its minor obligation of
providing defense and indemnity under the underlying CGL policy, while balking
at the more significant risk it has undertaken—drill-site pollution coverage under
the BITCO Umbrella Policy.  BITCO balks when confronted with the operator's
reasonable expectation of major protection under the umbrella policy.

BITCO is taking multiple bites at this apple.  When *Marjo* was decided
nearly three years ago, BITCO was on notice that its Program was problematic—
indeed, a federal district judge told BITCO it was wrong in the way it interpreted
its own policies. Despite this fact, BITCO did not rewrite its policy but continued
to offer the same problematic Program to JBBOC over a year later.  Now, it seeks
a declaratory ruling from this Court that it owes no duties to JBBOC under the
BITCO Umbrella Policy.  *Marjo* simply reflects that BITCO had full notice any
ambiguity created by its Program and the reasonable expectations of its insureds.

## IX.   CONCLUSION

For the foregoing reasons, JBBOC requests this Court grant summary judgment in its favor and find that the BITCO Umbrella Policy covers the Spill.

DATED this 12th day of July, 2019

s/ James G. Hunt
JAMES G. HUNT

/s/ Gregory S. Munro
GREGORY S. MUNRO
*Attorneys for Defendant JBBOC*

### CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document was drafted in Times New Roman font, size 14, and that it contains 5,397 words, exclusive of the Table of Contents, Table of Authorities, Table of Exhibits, Certificate of Compliance, and Certificate of Service.

/s/ James G. Hunt
James G. Hunt
Attorney for Defendant JBBOC

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2019, a copy of the foregoing document

was served upon the following persons by CM/ECF delivery:

Jesse Beaudette, Esq.
Ryan T. Heuwinkel, Esq.
BOHYER, ERICKSON, BEAUDETTE, & TRANEL, P.C.
283 West Front, Suite 201
Post office Box 7729
Missoula, Montana 59807-7729

John a Husmann
Gusavo A. Otalvora
BATESCAREY LLP
191 N. Wacher, Suite 2400
Chicago, IL 60606


/s/ James G. Hunt
James G. Hunt