IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)    BITCO GENERAL INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-14-1220-D |
| (1)    MARJO OPERATING COMPANY, INC., <br> (2)    KIM F. ZIEGELGRUBER, TRUSTEE OF THE KIM FRANK ZIEGELGRUBER REVOCABLE TRUST DATED AUGUST 23, 2012, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BITCO'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF MARJO OPERATING COMPANY, INC. AND BRIEF IN SUPPORT

COMES NOW Plaintiff, BITCO General Insurance Corporation ("BITCO"), formerly known as Bituminous Casualty Corporation, pursuant to Rule 56(b), Fed.R.Civ.P. and LCvR56.1, and files its Response in Opposition to the Motion for Summary Judgment of Defendant, Marjo Operating Company, Inc. ("Marjo") [Doc. 23], wherein BITCO respectfully requests that the Court deny Marjo's Motion [Doc. 23] and grant BITCO summary judgment on BITCO's own Motion for Summary Judgment [Doc. 25]. BITCO so moves on the basis that no genuine issues of material fact exist in the case at bar and BITCO is entitled to judgment as a matter of law. BITCO also submits the

following Brief in Support of BITCO's Response in Opposition to Marjo's Motion for Summary Judgment [Doc. 23].[1]

## BRIEF IN SUPPORT

## INTRODUCTION

This matter involves an insurance coverage dispute concerning coverage for "clean-up costs" for "environmental damage" arising out of a Logan County, Oklahoma "pollution incident" wherein BITCO seeks a declaration of the rights and obligations of the parties under Pollution Liability Policy No. CLP 2701199 ("Pollution Policy") issued to Marjo. It is undisputed that BITCO has paid the applicable $1,000,000 Aggregate Limit as reimbursement for "clean-up costs" mandated by the Oklahoma Corporation Commission and incurred as a result of a saltwater spill at a well site in Logan County. However, Marjo has filed a Counterclaim [Doc. 10] in which Marjo contends that BITCO's Commercial Umbrella Policy No. CUP 2 801 991 B ("Umbrella Policy") provides additional coverage to Marjo for damages sought by Kim F. Ziegelgruber, Trustee of the Kim Frank Ziegelgruber Revocable Trust dated August 23, 2012, owner of the property where the well is located, arising out of the same Logan County "pollution incident." BITCO respectfully submits that the Umbrella Policy's **POLLUTION EXCLUSION—FOLLOW FORM** endorsement **("POLLUTION EXCLUSION")**

---

[1] BITCO notes that there are two scrivener's errors in its Motion for Summary Judgment [Doc. 25] as follows:
  1. Page 14, the second line from the bottom, should read: "The Umbrella Policy's definition…"
  2. Page 15, the last line, should read: "Umbrella Policy concerning…"

2

applies to exclude any additional coverage to Marjo for claims arising out of the Logan County "pollution incident."

## BITCO'S RESPONSE TO MARJO'S UNDISPUTED FACTS

BITCO responds to Marjo's Statement of Material Facts Not In Controversy in its Motion [Doc. 23] as follows:

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   BITCO admits that, during the course of remediation, Marjo submitted claims to BITCO and BITCO reimbursed Marjo for "clean-up costs" incurred because of "environmental damage" resulting from the Grissom 3-1 well saltwater spill in the amount of one million dollars ($1,000,000). See copies of BITCO checks in the amount of $54,677.50, $649,980.26, and $295,342.24, attached as **Exhibit 3** to BITCO's Motion for Summary Judgment [Doc. 25]. BITCO has determined that although the $2,000 deductible was applied by BITCO to the first payment made to Marjo, BITCO included the deductible amount in the final payment, since BITCO determined that the total remediation costs would exceed the Aggregate Limit under the Pollution Policy. See Kelly Grammer Excess letter of December 18, 2013, **Exhibit 6** to BITCO's Motion for Summary Judgment [Doc. 25].

6.   Admitted.

7.   Admitted.

8. BITCO admits that BITCO agreed to provide a defense to Marjo in the Logan County lawsuit styled Kim F. Ziegelgruber, Trustee of the Kim Frank Ziegelgruber Revocable Trust dated August 23, 2012, v. Marjo Operating Company, Inc., Case No. CJ-2014-152 ("*Ziegelgruber* lawsuit") under the Pollution Policy, subject to a November 6, 2014, Supplemental Reservation of Rights letter, and specifically reserved its right to withdraw from Marjo's defense if this Court agrees with BITCO that it has no further obligation to defend Marjo for the claims asserted against it in the *Ziegelgruber* lawsuit.

9. BITCO admits that BITCO's reimbursements to Marjo in the total amount of $1,000,000 for "clean-up costs" exhausted the Pollution Policy's Aggregate Limit. See **Exhibit 1** to BITCO's Motion for Summary Judgment [Doc. 25], **COMMERCIAL LINES POLICY DECLARATIONS**, **LIMITS OF INSURANCE**, p. 2. By letter of October 24, 2013, BITCO disclaimed coverage under the Commercial Lines Policy No. 3588095 and the Commercial Umbrella Policy No. CUP 2801991. See **Exhibit 5** to BITCO's Motion for Summary Judgment [Doc. 25], October 24, 2013, Reservation of Rights letter from Kelly Grammer to Mark Meader, at p. 4. Because BITCO has fully performed its obligations under the Pollution Policy, BITCO has agreed to provide Marjo with a defense in the *Ziegelgruber* lawsuit, subject to a reservation of rights, and seek a determination from this Court that it owes no further obligation to Marjo under the Pollution Policy or under the Umbrella Policy.

## ARGUMENT AND AUTHORITY

Marjo does not contend that any of the policy language at issue in the case at bar is ambiguous. See Marjo's Brief [Doc. 23] at p. 6. Rather, Marjo inaccurately argues that

4

the Umbrella Policy applies to the claims asserted against Marjo in the *Ziegelgruber* lawsuit because the Umbrella Policy "incorporates the Pollution Policy as 'underlying insurance.'" Marjo's Brief [Doc. 23] at p. 6. Marjo further contends that "the only defense BITCO could assert would be to claim that the Umbrella Policy's various exclusions bar coverage of the claims asserted in the *Ziegelgruber* lawsuit." Marjo's Brief [Doc. 23] at p. 11.

In addressing the exclusions in the Umbrella Policy, Marjo first asserts that the Umbrella Policy's **OIL INDUSTRY LIMITATION ENDORSEMENT** and the **Saline Substances Contamination Hazard** contained in that Endorsement do not apply to preclude coverage. Marjo's Brief [Doc. 23] at pp. 11-13. On July 6, 2015, Mr. Ziegelgruber filed a Partial Dismissal in the *Ziegelgruber* lawsuit, dismissing his claims of subsurface damages caused by saline substances contamination (see Marjo's Undisputed Fact No. 7 and **Exhibit 5** to Marjo's Motion, the Partial Dismissal [Doc. 23]).[2] Since only surface damages are now alleged in the *Ziegelgruber* lawsuit, the issue

---

[2] In BITCO's Answer [Doc. 14] to Marjo's Counterclaim [Doc. 10], which was filed on December 17, 2014, BITCO states, in pertinent part, concerning the allegations of paragraph 5 of Marjo's Counterclaim, that "BITCO further denies that the 'Oil Industry Limitation Endorsement' to the Umbrella Policy 'does not preclude coverage under the Umbrella Policy' for the claims asserted in the *Ziegelgruber* lawsuit." BITCO's Answer to Counterclaim [Doc. 14] at ¶5. BITCO further states as its Affirmative Defense No. 4 [Doc. 14] that "[t]he Umbrella Policy's "Oil Industry Limitation Endorsement," Form CUP 00 60 03 97, may also preclude coverage to Marjo for the claims asserted in the *Ziegelgruber* lawsuit."

5

of whether the Saline Substance Contamination Hazard precludes coverage for subsurface contamination has been rendered moot.[3]

Marjo's remaining argument concerns the **POLLUTION EXCLUSION** of the Umbrella Policy. Marjo's Brief [Doc. 23] at pp. 13-15. As will be fully discussed below, Marjo's argument that the **POLLUTION EXCLUSION** of the Umbrella Policy does not apply to the claims in the *Ziegelgruber* lawsuit directly contradicts the fundamental principles of Oklahoma law concerning insurance policy construction, and should be summarily rejected by this Court.

**I.    THE BITCO POLLUTION POLICY IS NOT "'UNDERLYING INSURANCE' AT THE LIMITS SHOWN IN THE SCHEDULE OF 'UNDERLYING INSURANCE'" AS REQUIRED BY THE EXCEPTION TO THE BITCO UMBRELLA POLICY'S POLLUTION EXCLUSION.**

The Umbrella Policy's **POLLUTION EXCLUSION** provides, in pertinent part:

It is agreed that this *policy* does not apply to:

(1)     … "property damage" … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2)     Any loss, cost, or expense arising out of any:

   (a)     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   (b)     "Claim" or "suit" on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

---

[3] Marjo notified BITCO of Ziegelgruber's dismissal of the subsurface contamination claims on June 19, 2015. See letter of June 19, 2015, from Marjo's counsel, David Kearney, to Robert N. Naifeh, Jr. and Sarah Lee Gossett Parrish, attached as **Exhibit 10**.

6

>This exclusion does not apply if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by "underlying insurance" *at the limits shown in the schedule of "underlying insurance."* Coverage for such "bodily injury," "property damage" or "personal and advertising injury" is subject to the same limitations as the "underlying insurance."
>
>\*          \*          \*
>
>"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

See Umbrella Policy, **POLLUTION EXCLUSION—FOLLOW FORM,** attached as **Exhibit 2** to BITCO's Motion for Summary Judgment [Doc. 25]. (Emphasis added).

The Umbrella Policy's general definition of "underlying insurance" provides:

>**24.**   "Underlying insurance" means the coverage(s) afforded under insurance policies *designated in the schedule of "underlying insurance" on the Declarations Page of this policy.* "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.
>
>\*          \*          \*

See Umbrella Policy, at SECTION VI, DEFINITIONS, 24, attached as **Exhibit 2** to BITCO's Motion for Summary Judgment [Doc. 25].

Marjo argues that the Pollution Policy is "underlying insurance" under the above-quoted language contained in the exception to the **POLLUTION EXCLUSION**. Specifically, Marjo contends that the **POLLUTION EXCLUSION** does not apply "if insurance for such … property damage … is provided by the 'underlying insurance' is applicable and makes it clear that the Pollution Exclusion specifically does *not* apply because of Marjo's decision to purchase the Pollution Policy." Marjo's Brief [Doc. 23] at p. 14. (Emphasis in original.) In asserting this argument, Marjo ignores the Umbrella

Policy's complete definition of "underlying insurance," as well as additional language quoted above and contained in the exception to the policy's **POLLUTION EXCLUSION**.

The Umbrella Policy's definition of "underlying insurance" first includes *"the coverages afforded under insurance policies designated in the schedule of 'underlying insurance' on the Declarations Page of the policy."* The exception to the **POLLUTION EXCLUSION** expressly *requires* that insurance for "property damage" resulting from pollution be provided "*by 'underlying insurance' at the limits shown in the schedule of 'underlying insurance,'*" for the exception to apply. See BITCO's Motion for Summary Judgment [Doc. 25], **Exhibit 2**, Umbrella Policy, definition of "underlying insurance" and **POLLUTION EXCLUSION** (emphasis added). Marjo's contention that the Pollution Policy qualifies as "underlying insurance" under the exception to the Umbrella Policy's **POLLUTION EXCLUSION** is simply inaccurate.

BITCO issued a Commercial Lines Policy No. 3588095, which provided Commercial General Liability Coverage, and a Commercial Automobile Policy No. CAP 3588096, to Marjo. Both policies *are* listed on the Schedule of Underlying Insurance contained in the Commercial Umbrella Policy Declarations, *with each policy's specific limits also listed*. See BITCO's Motion for Summary Judgment [Doc. 25] Undisputed Fact No. 15., citing **Exhibit 2**, Umbrella Policy Declarations. It is undisputed that the Commercial Lines Policy No. 3588095 and the Commercial Automobile Policy No. CAP 3588096 are the *only* policies listed on the Umbrella Policy's Schedule of Underlying Insurance. It is also undisputed that the Pollution Policy is *not* "underlying insurance"

listed on the Umbrella Policy's Schedule of Underlying Insurance. Marjo admits this in its Counterclaim [Doc. 10] at ¶¶3 and 4. Therefore, the BITCO Commercial Lines Policy and Commercial Automobile Policy issued to Marjo are the *only* policies to which the **POLLUTION EXCLUSION'S** exception could possibly apply. Since neither the Commercial Lines Policy nor the Commercial Automobile Policy provides insurance for pollution-related "property damage," the exception to the **POLLUTION EXCLUSION** simply cannot apply.

Marjo's statements that its interpretation of the Umbrella Policy "is in keeping with the Parties' understanding and the ordinary and popular meaning of the contractual terms" (Marjo's Brief [Doc. 23] at p. 14) contradicts the clear language contained in the Umbrella Policy's definition of "underlying insurance" and in the exception to the Umbrella Policy's **POLLUTION EXCLUSION**. Marjo's disregard of the Umbrella Policy's relevant terms to support its purported claim for coverage is directly at odds with Oklahoma's long-standing precedent concerning insurance contract interpretation.

Oklahoma law requires that "a contract be construed as a whole, giving effect to each of its parts." Bituminous Casualty Corp. v. Cowen Constr. Inc., 55 P.3d 1030, 1033 (Okla. 2002) citing Title 15 O.S. § 157. As the Oklahoma Supreme Court has recognized, this rule is "amplified" by Oklahoma statutory law governing construction of insurance policies. Id., citing Title 36 O.S. §3621 ("[e]very insurance policy shall be construed according to the *entirety* of its terms and conditions set forth in the policy and as amplified, extended, or modified by any rider, endorsement or application attached to and made a part of the policy.") (Emphasis added.) Thus, the Umbrella Policy must be read as

9

a whole, giving the words and terms their ordinary meaning, *enforcing each part thereof*. BP America, Inc. v. State Auto Property & Cas. Ins. Co., 2005 OK 65, ¶ 148 P.3d 832 (emphasis added).

Contrary to these fundamental principles of Oklahoma insurance law, Marjo narrowly focuses on selective portions of the Umbrella Policy's provisions and ignores other relevant policy terms to support its argument for coverage under the Umbrella Policy. Indeed, accepting Marjo's argument that the exception to the Umbrella Policy's **POLLUTION EXCLUSION** applies because the Pollution Policy constitutes one form of "underlying insurance" under the Umbrella Policy renders the policy language "…*at the limits in the schedule of 'underlying insurance'…*" entirely meaningless. Under Oklahoma law, these essential policy terms have meaning and cannot be ignored. See BITCO's Motion for Summary Judgment [Doc. 25], **Exhibit 2**, Umbrella Policy, **POLLUTION EXCLUSION** (emphasis added). Because the Pollution Policy is clearly *not* "'underlying insurance' at the limits shown in the schedule of 'underlying insurance,'" the exception to the Umbrella Policy's **POLLUTION EXCLUSION** does *not* apply.

Marjo's strained construction of the Umbrella Policy is also contrary to Marjo's pre-litigation conduct. Notably, following BITCO's letter of October 24, 2013 (**Exhibit 5** to BITCO's Motion for Summary Judgment [Doc. 25]), disclaiming coverage under the Commercial Umbrella Policy, Marjo *never* questioned BITCO's determination that no coverage was available to Marjo for the "pollution incident" under the Umbrella Policy *until the issue was raised for the first time in Marjo's Counterclaim filed on November*

***26, 2014, over one year after BITCO's disclaimer***. See Undisputed Fact No. 19 to BITCO's Motion for Summary Judgment [Doc. 25]. Contrary to Marjo's assertions on p. 15 of its Brief [Doc. 23], Marjo did ***not*** bargain to include coverage for pollution in the Umbrella Policy. Indeed, the Umbrella Policy's **POLLUTION EXCLUSION** "follows form" to the **TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION** endorsement to the Commercial Lines Policy No. 3588095, under which BITCO disclaimed coverage at the same time it disclaimed coverage under the Umbrella Policy's **POLLUTION EXCLUSION**. See **Exhibit 5** of BITCO's Motion for Summary Judgment [Doc. 25], October 24, 2013, Reservation of Rights letter from Kelly Grammer to Mark Meader, at p. 4.

Marjo also opines that the Pollution Policy and the Umbrella Policy were intended to be construed together. Marjo Brief [Doc. 23] at p. 14. This is inaccurate. As previously stated, only the BITCO Commercial Lines Policy and the BITCO Commercial Automobile Policy are listed on the Schedule of Underlying Insurance contained in the Commercial Umbrella Policy Declarations, with each policy's specific limits also listed. Therefore, these are the ***only*** policies intended to be construed with the Umbrella Policy for purposes of the exception to the policy's **POLLUTION EXCLUSION**. Since it is undisputed that neither the Commercial Lines Policy nor the Commercial Automobile Policy provides coverage to Marjo for the *Ziegelgruber* claims, then the Umbrella Policy's **POLLUTION EXCLUSION** ***applies*** to exclude additional coverage to Marjo for those claims.

11

## II. BITCO HAS NO DUTY TO DEFEND MARJO UNDER THE UMBRELLA POLICY BECAUSE THE *ZIEGELGRUBER* CLAIMS ARE NOT COVERED BY THE UMBRELLA POLICY.

Marjo contends that BITCO's duty to defend under the Umbrella Policy "does not hinge on whether there is coverage under the Umbrella Policy, it only necessitates that there is a 'claim' or a 'suit,' that Marjo has 'underlying insurance,' and that the limit of the 'underlying insurance' has been exhausted." Brief [Doc. 23] at pp. 10-11. In support, Marjo paraphrases some of the Umbrella Policy's language relative to the duty to defend, stating that BITCO has "a duty to defend any 'claims' or 'suits' which are covered by this policy…." Brief [Doc. 23] at p. 8. The Umbrella Policy language provides:

> We have the **right** to defend any "claim" or "suit" against the insured **seeking damages to which this insurance applies**….

See Umbrella Policy, attached to BITCO's Motion for Summary Judgment [Doc. 25] as **Exhibit 2**, at **SECTION II—DEFENSE AND SUPPLEMENTARY PAYMENTS—COVERAGES A. and B.** (page 10 of 25) (emphasis added).

Clearly, **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. INSURING AGREEMENT,** of the Umbrella Policy, contemplates a right to defend an insured *only* where the claim is covered by the Umbrella Policy. The **POLLUTION EXCLUSION** is clear that the Umbrella Policy, in its entirety, does not apply where the **POLLUTION EXCLUSION** precludes coverage. See Umbrella Policy, **POLLUTION EXCLUSION**, **Exhibit 2** to

12

BITCO's Motion for Summary Judgment [Doc. 25] ("It is agreed that this *policy* does not apply to …"). (Emphasis added.)

Oklahoma law provides that "[t]he duty to defend is separate from, and broader than, the duty to indemnify, but the insurer's obligation is not unlimited." First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland, 1996 OK 105, 928 P.2d 298, 303. "An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy." Id. at 304 (emphasis in original).

BITCO respectfully submits that the *Ziegelgruber* claims are not covered under BITCO's Umbrella Policy because the **POLLUTION EXCLUSION** applies to preclude coverage to Marjo for the *Ziegelgruber* claims. No "potential of liability" under the Umbrella Policy is present here. Therefore, BITCO has no duty to defend Marjo under the Umbrella Policy.

## CONCLUSION

A policy cannot be interpreted to extend coverage which was not intended by its terms. BP America, Inc. v. State Auto Prop. & Cas. Ins. Co., 2005 OK 65, ¶11, 148 P.3d 832, 837. Marjo's strained and selective construction of the Umbrella Policy would result in coverage which was not intended by its terms. The obvious intent of the **POLLUTION EXCLUSION**, when considered with the policy as a whole, is to provide umbrella liability coverage for "property damage" resulting from pollution only when such insurance is provided by "'underlying insurance' at the limits shown in the schedule of 'underlying insurance.'" Since "underlying insurance" for "property damage" resulting from pollution is *not* shown in the schedule of "underlying insurance" to the Umbrella

Policy's Declarations page, then the **POLLUTION EXCLUSION** *applies* to exclude additional coverage to Marjo for the *Ziegelgruber* claims.

Accordingly, BITCO respectfully requests that the Court deny Marjo's Motion for Summary Judgment [Doc. 23] and grant BITCO summary judgment on BITCO's own Motion for Summary Judgment [Doc. 25], declaring:

(1)     that BITCO has no duty to defend or indemnify Marjo under the Pollution Policy because BITCO has paid the policy's Aggregate Limit of $1,000,000 to Marjo;

(2)     that the **POLLUTION EXCLUSION** applies to exclude any coverage to Marjo under the Umbrella Policy for the *Ziegelgruber* claims; and

(3)     for such other and further relief that the Court deems just and appropriate.

Respectfully submitted,

/s/Robert N. Naifeh, Jr.
Robert N. Naifeh, Jr., OBA No. 10419
Sarah Lee Gossett Parrish, OBA No. 11846
Derryberry & Naifeh, LLP
4800 North Lincoln Boulevard
Oklahoma City, OK 73105
(405) 528-6569
(405) 528-6462 – Facsimile
rnaifeh@derryberrylaw.com
slparrish@derryberrylaw.com
**ATTORNEYS FOR PLAINTIFF,
BITCO GENERAL INSURANCE
CORPORATION**

## CERTIFICATE OF SERVICE

This is to certify that on the 27th day of July 2015, a true and correct copy of the above and foregoing document was served, via the ECF Filing Systems, on the following counsel of record:

David L. Kearney
Michael E. Smith
Tami J. Hines
Chase Tower
100 North Broadway, Suite 2900
Oklahoma City, OK &3102-8865
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
mesmith@hallestill.com
dkearney@hallestill.com
thines@hallestill.com
**ATTORNEYS FOR DEFENDANT,**
**MARJO OPERATION COMPANY, INC.**

J. Todd Woolery
Jodi C. Cole
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
todd.woolery@mcafeetaft.com
jodi.cole@mcafeetaft.com
**ATTORNEYS FOR KIM F. ZIEGELGRUBER,**
**TRUSTEE OF THE KIM FRANK ZIEGELGRUBER**
**REVOCABLE TRUST DATED AUGUST 23, 2012**

                /s/Robert N. Naifeh, Jr.



# HALL ESTILL
ATTORNEYS AT LAW

David L. Kearney
Chase Tower
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Direct Dial: (405) 553-2316
Facsimile: (405) 553-2855
dkearney@hallestill.com

June 19, 2015

Robert N. Naifeh, Jr.
Sarah Lee Gossett Parrish
DERRYBERRY & NAIFEH, LLP
4800 N. Lincoln Blvd.
Oklahoma City, OK 73105

Re: *Bitco General Insurance Corporation vs. Marjo Operating Company, Inc., et al.*
United States District Court, Western District of Oklahoma | CIV-14-1220-D

Dear Bob,

We have reviewed the documents which we believe may support our counterclaims and defenses in the declaratory judgment action. We are producing those documents with this letter. We did not bother to include the policies or your Reservation of Right letter, as you already have those. We are including Billy Clay's report on behalf of Plaintiff to support our claim for benefits, and to show the amount claimed by Plaintiff. We are also including a recent partial dismissal filed by the Plaintiff, which dismisses his claim for damages to the subsurface water.

Obviously, we have a large number of documents related to the defense of the underlying action, including environmental reports, photographs, and other documents. I do not believe they are relevant to address the issue of coverage in this case. We will provide them to you if you desire. As we discussed at the scheduling conference with the Court, this matter is going to turn primarily on the interpretation of the policies at issue.

Very truly yours,

David L. Kearney

DLK:kdb

Enclosures.

1129334.1:610637:00230

**EXHIBIT 10**