IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BITCO GENERAL INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>JAY BURNS BROWN OPERATING CO.,<br><br>Defendant. | CV 18-87-GF-BMM-JTJ<br><br>**FINDINGS AND RECOMMENDATIONS** |

## INTRODUCTION

Plaintiff BITCO General Insurance Corporation (BITCO) brought this action seeking a declaration that property damage caused by its insured, Defendant J. Burns Brown (J. Burns), is not covered under an umbrella insurance policy that BITCO issued to J. Burns.

The parties have filed cross-motions for summary judgment on the coverage issue. The parties have also filed a joint Statement of Stipulated Facts. (Doc. 38). The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B) for findings and recommendations. (Doc. 36). The Court has conducted a hearing on the motions. The Court is prepared to enter its findings and recommendations.

## BACKGROUND

The material facts in this case are not in dispute. (Doc. 38 at 6). J. Burns operates an oil and gas business in northcentral Montana. An oil-well production site operated by J. Burns inadvertently released approximately 238 barrels of crude oil and 1,200 barrels of production water into a tail-water of the North Chinook Reservoir in Blaine County, Montana, in March of 2017. The oil spill had an impact on approximately 4.47 acres of upland and wetland areas.

The Montana Department of Environmental Quality (DEQ) determined that the spill resulted in contamination that exceeded the limits prescribed by the Montana Water Quality Act. The DEQ demanded that J. Burns pay the costs of clean-up and remediation associated with the oil spill. The costs of clean-up and remediation may exceed $1,000,000.

J. Burns was insured under two BITCO liability insurance policies when the oil spill occurred — a Commercial Lines Policy (Primary Policy) with Policy No. CLP 3 641 462 H, and a Commercial Umbrella Policy (Umbrella Policy) with Policy No. CUP 2 811 506 H. (Docs. 7-1, 38-3).

BITCO's Primary Policy provided coverage for the clean-up and remediation costs associated with the oil spill under a "Contamination or Pollution

Coverage" endorsement. (Doc. 7-1 at 44). The pollution coverage limit was $100,000. *Id.*

J. Burns notified BITCO of the oil spill on or about March 30, 2017. BITCO accepted coverage under the Primary Policy. BITCO has paid J. Burns the Primary Policy's pollution coverage limit of $100,000.

When the $100,000 limit on the Primary Policy was exhausted, J. Burns demanded that BITCO provide pollution coverage under the Umbrella Policy. The Umbrella Policy had a liability limit of $1,000,000, subject to a $10,000 self-insured retention. (Doc. 38-3 at 6). BITCO denied coverage under the Umbrella Policy. The present action followed.

## POSITIONS OF THE PARTIES

BITCO seeks a declaration that the clean-up and remediation costs associated with the oil spill are not covered under the Umbrella Policy. BITCO argues that the plain language of the Umbrella Policy's pollution exclusion operates to bar coverage for the clean-up and remediation costs.

J. Burns seeks a declaration that the clean-up and remediation costs are covered under the Umbrella Policy. J. Burns argues that it is entitled to summary judgment because: 1) coverage exists under the "plain language" of the Umbrella Policy; 2) "alternatively, the [Umbrella Policy] is ambiguous and must be

construed against BITCO and in favor of [J Burns];" and 3) a "denial of coverage [would] violate[] the reasonable expectations of [J. Burns], and [would be] violative of public policy." (Doc. 46 at 8).

## APPLICABLE LAW

### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The material facts remain undisputed. The parties agree that the determination of whether coverage exists under BITCO's Umbrella Policy presents a question of law for the Court to decide.

### b. Application of Montana Law

Diversity of citizenship provides the Court's jurisdiction. 28 U.S.C. § 1332. Thus, the Court must apply the substantive law of the forum state — Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

### c. Montana Law Relating to Insurance Contracts

In Montana, the interpretation of an insurance contract is a question of law. *Marie Deonier & Associates v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont.

2000). The language of an insurance policy governs if it is clear and explicit. *Id.* An ambiguity exists when the "wording or phraseology" of an insurance contract is reasonably subject to two different interpretations. *Jacobsen v. Farmers Union Mut. Ins. Co.*, 87 P.3d 995, 997-998 (Mont. 2004). Ambiguities are construed in favor of the insured and against the insurer. *Marie Deonier & Assoc.*, 9 P.3d at 630. Exclusions from coverage are narrowly construed "because they are contrary to the fundamental protective purpose of an insurance policy." *Id.*

## DISCUSSION

### a. The Umbrella Policy's Coverage Provision

BITCO's Umbrella Policy provides a broad grant of liability coverage. The Umbrella Policy states that BITCO will reimburse J. Burns for the:

> "ultimate net loss in excess of the retained limit because of . . . property damage caused by an occurrence which takes place during the policy period."

(Doc. 38-3 at 8).

The Umbrella Policy defines the "retained limit," in pertinent part, as:

> "That amount of underlying insurance applicable to any claim . . . whether such underlying insurance is collectible or not."

(Doc. 38-3 at 30).

The Umbrella Policy defines "property damage" as:

> "[p]hysical injury to tangible property, including all resulting loss or use of that property."

(Doc. 38-3 at 30).

The Umbrella Policy defines an "occurrence" as:

> "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

(Doc. 38-3 at 29).

Thus, absent an applicable exclusion, the Umbrella Policy would provide coverage for pollution-caused property damage. BITCO's Umbrella Policy does contain a pollution exclusion, however.

### b. The Umbrella Policy's Pollution Exclusion

The Umbrella Policy's pollution exclusion states that coverage for pollution-caused property damage is generally excluded. (Doc. 38-3 at 40). The pollution exclusion states, in pertinent part, that no coverage exists for:

> "property damage . . . arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."

(Doc. 38-3 at 40).

The Umbrella Policy's pollution exclusion does contain a single exception.

The Umbrella Policy states that the pollution exclusion does not apply when:

> "[I]nsurance for . . . [pollution-caused] property damage . . . is provided by "underlying insurance" at the limits shown in the schedule of underlying insurance [set forth on the declarations page of the Umbrella Policy.]"

(Doc. 38-3 at 40).

The Umbrella Policy defines "underlying insurance," in pertinent part, as all:

> "coverage(s) afforded under insurance policies designated in the schedule of underlying insurance on the Declarations Page of [the] policy . . . [and] "any other insurance available to the insured."

(Doc. 38-3 at 31).

The Court finds the pollution exclusion, with its stated exception, to be clear and unambiguous. Coverage for pollution-caused property damage is generally excluded under the Umbrella Policy. The pollution exclusion does not apply, however, if it is shown: 1) that the insured possesses an insurance policy that is referenced in the Umbrella Policy's schedule of underlying insurance; 2) that the insurance policy provides coverage for pollution-caused property damage; and 3) that the insurance policy provides coverage for pollution-caused property damage at a coverage limit that equals or exceeds the coverage limits shown in the Umbrella Policy's schedule of underlying insurance. (Doc. 38-3 at 40).

The first two requirements are satisfied here. The Primary Policy that J. Burns purchased from BITCO is described in the Umbrella Policy's schedule of underlying insurance, and the Primary Policy does provide coverage for pollution-caused property damage. (Doc. 7-1 at 44).

Unfortunately for J. Burns, the third requirement is not satisfied. The liability limits shown in the Umbrella Policy's schedule of underlying insurance are $1,000,000 "Each Occurrence" and $2,000,000 "General Aggregate." (Doc. 38-3 at 6). The Primary Policy that J. Burns purchased from BITCO has a pollution coverage limit of only $100,000. (Doc. 7-1 at 44). BITCO's Umbrella Policy therefore does not provide coverage for the pollution-caused property damage at issue in this case.

## **RECOMMENDATIONS**

1. BITCO's Motion for Summary Judgment (Doc. 43) should be GRANTED.

2. J. Burns's Motion for Summary Judgment (Doc. 45) should be DENIED.

3. The Clerk should be directed to enter judgment accordingly.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 24th day of January, 2020.

John Johnston
United States Magistrate Judge