James G. Hunt, Esq.
Hunt & Fox PLLP
111 No. Last Chance Gulch, Suite 3A.
Helena MT 59601
Phone: (406) 442-8552
Facsimile: (406) 495-1660
jhunt@huntlaw.net

Greg Munro, Esq.
3343 Hollis Street
Missoula MT 59801
Phone: (406) 493-5361
greg.munro@umontana.edu
    *Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BITCO GENERAL INSURANCE CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>J. BURNS BROWN CO.,<br><br>    Defendant. | CV-18-87-GF-BMM-JTJ<br><br>**J. BURNS BROWN CO.'s OBJECTIONS TO THE MAGISTRATES FINDINDS AND RECOMMENDATIONS** |

Defendant J. Burns Brown Co. ("JBBOC") respectfully files its Objections to Magistrate's Findings and Recommendations (*"Recommendations"*) pursuant to L.R. 72.3 and 28 U.S.C. § 636(b)(1). Doc. 60.

1

## I.   INTRODUCTION

JBBOC objects to the following findings in the Court's "*Recommendations*". Doc. 60:

- First, JBBOC objects to the Court's finding that "the pollution exclusion,[1] with its stated exception, [is] clear and unambiguous." Doc. 60 at 7.

- *Arguendo*, JBBOC objects to the *Recommendation's* failure to consider the "reasonable expectations" doctrine and its application. *Passim.*

## II.   APPLICABLE LAW

The *Recommendations* rely upon Montana law which, in relevant part, includes:

- The interpretation of an insurance contract is a question of law. *Recommendations* at 4 (*citing Marie Deonier & Associates v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000).

- The language of an insurance policy governs if it is clear and explicit. *Id.* at 5.

- An ambiguity exists when the "wording or phraseology" of an insurance contract is reasonably subject to two different interpretations. *Id.* (*citing Jacobsen v. Farmers Union Mut. Ins. Co.*, 87 P.3d 995, 997-998 (Mont. 2004)

- Ambiguities are construed in favor of the insured and against the insurer. *Id.* (*citing Marie Deonier & Assoc.*, 9 P.3d at 630)

- Exclusions from coverage are narrowly construed "because they are contrary to the fundamental protective purpose of an insurance policy." *Id.*

---

[1] Herein, JBBOC refers to the "Pollution Exclusion—Follow Form" as the "Follow Form."

2

Because the *Recommendations* do not address JBBOC's ambiguity and reasonable expectation arguments, JBBOC directs the Court to the following applicable Montana law not found in the *Recommendations*:

- Whether an ambiguity exists is determined through the eyes of a consumer with average intelligence but not trained in the law or insurance business. *Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of America,* 3 F. Supp 3d 865, 870 (D Mont. 2014).

- Exclusions and words of limitation in a policy must be strictly construed against the insurer regardless of whether or not they are ambiguous. *Id.* 871.

- Montana follows the "reasonable expectations doctrine," which provides that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations. *Id.* (citing *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 308, ¶ 20; *Transamerica Ins. Co. v. Royle* (Mont. 1983) 202 Mont. 173, 656 P.3d 861, 867).

- The reasonable expectations doctrine is inapplicable when the terms of a policy are clear and explicit. *Id.*

- Application of the reasonable expectations doctrine is also generally unnecessary where policy provisions are ambiguous, because a finding of ambiguous insurance terms obviates the need for its application. *Id.*

### III.   SUMMARY OF ARGUMENT

The issue is whether the "Pollution Exclusion – Follow Form" of the Umbrella policy provides coverage for JBBOC's pollution spill. The Follow Form language initially excludes coverage but then has a provision that provides coverage if the elements are met (the exception to the exclusion). By adopting

3

BITCO's interpretation of the policy and concluding the exception to the exclusion unambiguously excludes coverage, the *Recommendations* implicitly rejects JBBOC's argument by failing to address it. Although the *Recommendations* may provide a reasonable interpretation of the application of the exclusion, JBBOC's application of the exception clearly and explicitly provides coverage. To deny coverage, the policy must be read beyond its clear and explicit language. Therefore, JBBOC objects to the *Recommendations'* finding that the policy unambiguously excludes coverage.

 *Arguendo*, if the policy language unambiguously excludes coverage, the court still must consider the reasonable expectations of the insured. The *Recommendations* do not discuss reasonable expectations. Here, JBBOC's expectation of coverage is objectively reasonable such that coverage must be afforded.

 Accordingly, JBBOC requests that this Court reject the *Recommendations* and rule there is coverage.

///

## IV.    OBJECTION 1. JBBOC OBJECTS TO THE *RECOMMENDATIONS'* FINDING THAT THE POLLUTION EXCLUSION, WITH ITS STATED EXCEPTION, ARE CLEAR AND UNAMBIGUOUS.

### a. THE POLICY LANGUAGE MANDATES THAT THE EXCEPTION TO THE EXCLUSION APPLIES.

The *Recommendations* conclude "…the pollution exclusion, with its stated exception, [is] clear and unambiguous," and can be reasonably read only to exclude coverage. Doc. 60 at 7.  JBBOC objects to this finding because the clear and explicit language in the Primary and Umbrella policies provide pollution coverage for JBBOC.

JBBOC has prepared the following table summarizing its argument.  A narrative explanation follows the table.  Pages from the policies are attached as **Exhibit 1** to better explain the table by referencing specific policy at issue in steps 2, 4-9 (the "\*" in the table denote steps contained in **Exhibit 1**):

| NO. | POLICY PROVISION | EXPLANATION | DOC. |
|---|---|---|---|
| 1 | Primary Policy f. | Excludes pollution coverage. | 38-2 at 25 |
| 2* | Primary Policy pollution endorsement | Pollution coverage of $100,000. | 38-2 at 44 |
| 3 | Umbrella Policy | Broad promise of coverage. Insuring agreement does not address pollution.  Unless there is an exclusion, there is pollution coverage. | 38-3 at 8 |
| 4* | Umbrella Pollution Exclusion – Follow Form – exclusion. | The exclusion in the Follow Form excludes "property damage" arising out of "pollutants." | 38-3 at 40 |

| | | | |
|---|---|---|---|
| 5* | Umbrella Pollution Exclusion – Follow Form – exception. If JBBOC satisfies this exception, pollution coverage exists. | This exclusion does not apply if insurance for such … "property damage" is provided by "'underlying insurance' at the limits shown in the schedule of "underlying insurance." | 38-3 at 40 |
| 6* | Umbrella definition of "underlying insurance" determines whether the exception applies and negates the exclusion. | "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy. | 38-3 at 31 |
| 7* | Umbrella "Declarations Page" schedule of "underlying insurance" to determine the type of coverage. | SCHEDULE OF UNDERLYING INSURANCE, GENERAL LIABILITY, identifies the Primary Policy, CLP 3 641 462 H.  The limit for Each Occurrence is $1,000,000. | 38-3 at 44 |
| 8* | Umbrella definition of "underlying insurance" to explain how to determine whether the "underlying insurance" is $1,000,000 as required by exception to the Follow Form exclusion. | The coverage and limits stated in the Declarations for underlying insurance, and any renewals or replacements thereof, apply whether or not such is collectible. | 38-3 at 31 |
| 9* | Commercial General Liability Declarations page (Primary) to determine coverage and limit. | Each Occurrence Limit, $1,000,000. | 38-2 at 12 |
| 10 | Comparison of the limits of underlying insurance providing property damage ($1,000,000 limit of Primary Policy) with the limits in the SCHEDULE OF UNDERLYING INSURANCE" ($1,000,000) | The limits are the same and coverage is thus afforded. This combines Steps 9 and 7. | 38-2 at 12 and 38-3 at 44. |

6

Steps Nos. 1 through 3 from the table describe the analysis prior to arriving at the heart of the issue which is whether the exception to the exclusion applies. The exclusion reads (Step No. 4):

> It is agreed that this policy does not apply to:
>
> (1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

This exclusion language, without an exception, excludes pollution coverage. However, there is an exception to the exclusion in the Follow Form (Step No. 5):

> This exclusion does not apply if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by "underlying insurance" at the limits shown in the schedule of "underlying insurance." Coverage for such "bodily injury," "property damage" or "personal and advertising injury" is subject to the same limitations as the "underlying insurance."

Doc. 38-3 at 40.

Because "underlying insurance" is in quotations, the average insurance consumer would conclude it is a defined term and search for it in the definition section. The consumer would be unlikely to look for the <u>schedule of "underlying insurance"</u> because it is not emphasized by capitalization, bold, underlining, or any other manner.

///

      The definition of "underlying insurance" is found in the definitions section:

> 24. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy. "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy. Such other insurance includes any policies issued to renew or replace these policies during the policy period of this insurance that provide:
>
>     a.   At least the same limits of insurance; and
>
>     b.   At least the same coverage.
>
> The coverage and limits stated in the Declarations for underlying insurance, and any renewals or replacements thereof, apply whether or not such is collectible.

Doc. 38-3 at 31.

      Initially, the relevant language is "'[u]nderlying insurance' means the coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy." (Step No. 6).

      Unlike the exception to the exclusion, the definition's reference to "the <u>D</u>eclarations <u>P</u>age of <u>this</u> policy" directs the consumer to the COMMERCIAL UMBRELLA POLICY DECLARATIONS (Doc. 38-3 at 6) because the first letters of each word (D and P) are capitalized and it refers to "<u>this</u> Policy." Presumably, the SCHEDULE OF UNDERLYING INSURANCE is the same as the schedule of "underlying insurance," as referenced in the exception to the exclusion and the definition of "underlying insurance."

///

**SCHEDULE OF UNDERLYING INSURANCE:**

| TYPE OF INSURANCE | AUTOMOBILE LIABILITY | GENERAL LIABILITY | EMPLOYERS LIABILITY |
|---|---|---|---|
| Company | BITCO General | BITCO General | Excluded |
| Policy No.: | CAP 3 641 464 H | CLP 3 641 462 H | |
| Policy Period: | From: 09/01/16<br>To: 09/01/17 | From: 09/01/16<br>To: 09/01/17 | From:<br>To: |
| Limits of Liability | Each Accident<br>$1,000,000. | General Aggregate<br>$2,000,000.<br>Products/Comp. Oper. Aggregate<br>$2,000,000.<br>Personal and Advertising Injury<br>$1,000,000.<br>Each Occurrence<br>$1,000,000. | Bodily Injury Each Accident<br>$<br>Bodily Injury By Disease Pol. Limit<br>$<br>Bodily Injury By Disease Each Emp.<br>$ |

The Primary Policy, CLP 3 641 462 H, is identified as the policy providing coverage. The limit for Each Occurrence is $1,000,000. (Step No. 7). Because the exception to the exclusion applies if "underlying insurance" is provided at the limits shown in the schedule of "underlying insurance," the applicable limit for the "provided insurance" must be $1,000,000, as reflected on the SCHEDULE OF UNDERLYING INSURANCE, for the exception to apply.

The definition of "underlying insurance" must be consulted again. (Step No. 8). The second part of the definition addresses both "coverage and limits" which recognizes coverage (risk insured) and limits (dollar amount of coverage) are different. The second part of the definition explains how to determine both the coverage and the limits applicable to determine the "underlying insurance":

> The coverage and limits stated in the Declarations for underlying insurance, and any renewals or replacements thereof, apply whether or not such is collectible.

Doc. 38-3 at 31.

9

Based on the prior steps, the consumer knows that "underlying insurance" refers to the Primary Policy. The consumer sees that the word "Declarations" is capitalized in the term "Declarations for underlying insurance.". Therefore, she knows she must find the specific word "Declarations" in the Primary Policy to determine the applicable limits of the Primary Policy. "Declarations" is found 29 times in the Primary Policy, but the only page containing policy limits and the word "Declarations" is the COMMERCIAL GENERAL LIABILITY DECLARATIONS. Doc. 38-2 at 21. The Each Occurrence Limit is $1,000,000, the same limit found in the schedule of "underlying insurance" and therefore the same limit required by the exception to the pollution exclusion.

The definition of "underlying insurance" states that the $1,000,000 limit on the Primary Policy declaration applies "whether collectible or not." Although the $1,000,000 in the Declarations is not collectible, the terms of the policy contract mandate that it must be the limit used to determine whether the exception to the exclusion is satisfied. Therefore, the exception nullifies the exclusion and there is coverage.

Because "underlying insurance" is provided at the same limits shown in the "schedule of 'underlying insurance,'" the exception nullifies the pollution exclusion and there is coverage.

### b. BITCO'S INTERPRETATION, ADOPTED BY THE *RECOMMENDATIONS*, REQUIRES EXTRAPOLATION BEYOND POLICY LANGUAGE.

JBBOC anticipates BITCO will argue that when considering the limits of the "underlying insurance" of the Primary Policy, the entire policy, including endorsements, must be considered. This would require the consumer take an additional step not found in the policy language and find the $100,000 limit on the pollution endorsement (Doc. 38-2 at 44) and compare it to the $1,000,000 limit reflected in the SCHEDULE OF UNDERLYING INSURANCE. This argument appears to have been adopted in the *Recommendations*. Doc. 60 at 8. However, as recognized by Bitco, "[t]he Umbrella Policy is a separate, stand-alone policy that contains its own insurance terms, conditions, and exclusions." Doc. 50 at 10.

When determining whether the endorsement, with its $100,000 limit, is the "underlying insurance," it is important to recognize that the issue here is whether the Umbrella Policy provides coverage, not the Primary Policy. It is the Umbrella Policy language and coverage that is at issue here, not the language of the Primary Policy. And again, the Umbrella Policy directs the insured to the Primary Policy Declarations, not the endorsement.

"The language of an insurance policy governs if it is clear and explicit." *Marie Deonier & Assoc.*, *supra*. As explained above, the definition of "underlying insurance" clearly and explicitly directs the consumer to the Primary Policy's

11

Declarations to determine the applicable limit of "underlying insurance." Neither the Primary Policy nor the Umbrella Policy contain language that directs the consumer to the Primary Policy's pollution endorsement of $100,000 to determine the limit of "underlying insurance." Significantly, the Primary Policy's Declarations do not list the $100,000 limit found in the Primary Policy's pollution endorsement. A determination that the applicable limit is anything other than $1,000,000, i.e., the $100,000 pollution endorsement limit, requires extrapolation beyond the policy language that is not supported by the contractual language in the Umbrella Policy.

These exclusions must be narrowly construed, *Marie Deonier & Assoc., supra,* and strictly construed against the insurer. *Barnard Pipeline, Inc., supra.* If an exclusion is found to be applicable because of extrapolation beyond policy language, it has not been narrowly and strictly construed against the insurer.

 c. **THE POLICY IS AMBIGUOUS AND MUST BE CONSTRUED TO AFFORD COVERAGE.**

If the *Recommendations'* interpretation is found to be reasonable, JBBOC's interpretation based on policy language is also reasonable. The policy is ambiguous and must be construed to afford coverage.

Because the policy is "reasonably subject to two interpretations," it is ambiguous. *Jacobsen, supra.* Because "[a]mbiguities are construed in favor of the

insured and against the insurer," coverage must be afforded. *Marie Deonier & Assoc., supra,*.

"Whether an ambiguity exists is determined through the eyes of a consumer with average intelligence but not trained in the law or insurance business." *Barnard Pipeline, Inc., supra* (the "average insurance consumer"). It is unreasonable to expect the average insurance consumer to reason beyond policy language to interpret an insurance policy.

### V. *ARGUENDO*, JBBOC OBJECTS TO THE RECOMMENDATION'S FAILURE TO CONSIDER THE "REASONABLE EXPECTATIONS" DOCTRINE AND ITS APPLICATION. *PASSIM*.

#### a. CONSIDERATION OF THE REASONABLE EXPECTATIONS DOCTRINE IS REQUIRED HERE.

"The objectively reasonable expectations of … intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations. *Barnard Pipeline, Inc.*, *supra.* However, "the reasonable expectations doctrine is inapplicable when the terms of a policy are clear and explicit." *Id.*

The Montana Supreme Court does not require ambiguity as a condition to applying the reasonable expectations doctrine. *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983) (cited with approval in *Barnard Pipeline Inc., supra*). The Montana Supreme Court generally treats the violation of an insured's

reasonable expectations as grounds to void a clause because it violates public policy, even if the policy is unambiguous. *See cases and analysis collected at Munro, "The Reasonable Expectations Doctrine in Montana,"* TRIAL TRENDS, Summer 2008, (attached as **Exhibit 2**). While the Montana Federal District Court historically required a finding of ambiguity before applying the reasonable expectations doctrine, *Barnard Pipeline, Inc.*'s citation to *Royle* with approval indicates a merging of federal and state jurisprudence on this issue.

  Thus, even though the *Recommendations* found the policy language to be unambiguous and applied the exclusion, if the exclusion violates the insured's objectively reasonable expectations, such expectations should be honored. Here, the coverage analysis required "painstaking study" due to the confounding nature of the BITCO Program. *See, infra*. The fact that the *Recommendations'* ultimate conclusion required extrapolation beyond policy language, *supra*, indicates the policy terms are not clear and explicit. For these reasons, JBBOC asserts that consideration of its reasonable expectation argument was required.

///

### b. JBBOC'S EXPECTATION OF COVERAGE HERE IS OBJECTIVELY REASONABLE.

#### i. IT IS OBJECTIVELY REASONABLE FOR THE AVERAGE INSURANCE CONSUMER TTHAT AN UMBRELLA POLICY PROVIDES COVERAGE AFTER THE PRIMARY POLICY'S LIMITS HAVE BEEN EXHAUSTED.

One of the functions of an umbrella policy is to provide for a higher limit of liability for those losses typically covered by the CGL policy. *Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*, 666 F.3d 384 (CA 6 201). The umbrella acts as excess insurance in situations where the CGL policy has been exhausted. *Scottsdale Ins. Co. v. Safeco Ins. Co. of Am.*, 111 F. Supp. 2d 1273 (M.D. Alabama, Eastern Div. 2000). This is in keeping with the nature of umbrella policies.

Although referring to personal insurance , Appleman's explanation of the importance of Umbrella Policies applies here, because JBBOC is a small family corporation:

> One very important type of coverage in these days of potentially high verdicts is that provided by so-called umbrella or catastrophe policies. Briefly, these are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection up to a million, five million, ten million or more. It gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire. It should be noted that these polices often provide a primary coverage in areas which might not bes and the insured's reasonable expectations as to what umbrella policies do.

15

included in the basic coverage, since it is the intent of the company to afford a comprehensive protection in order that such peace of mind may truly be enjoyed.

8A *John A. Appleman, et al.*, Insurance Law and Practice, §4909.85, at 452-53 (1981).

This Court should take judicial notice that an insured's expectation of coverage under an umbrella policy after the limits of the primary policy have been exhausted are objectively reasonable.

### ii. JBBOC'S EXPECTATION OF COVERAGE IS OBJECTIVELY REASONABLE IN THE CONTEXT OF THE BITCO PROGRAM.

Determining whether the expectations of an insured "are objectively reasonable must begin with an assessment of the nature of the security which a reasonably prudent layman would understand the policy is generally designed to provide." *Shook v. State Farm Mutual Ins. Co*., 872 F. Supp. 768, 774 (Mont. 1994).

BITCO is an insurer specializing in providing insurance for coal entities, oil operators, and heavy industry, and markets its product as an insurance "Program" tailored to cover the particular risks of these types of businesses.. *See* Doc. 46 at 6, Doc. 48-2, Doc. 48-3. When BITCO offered the BITCO Program to JBBOC, it knew JBBOC's business to be "oil/gas lease operations." Doc. 38-2 at 3.

BITCO sold JBBOC an "On Shore Oil & Gas Extraction" Program. Docs. 48-2 at 7, 48-3. BITCO's "agents are well versed in the industries we serve and are familiar with the daily risks you deal with." Doc. 48-2 at 4. BITCO "specializes in offering insurance policies involved in on-shore production of petroleum and natural gas, including insurance for operators, drillers, contractors located from the Rocky Mountains to the Appalachian Basin." Doc 48-3 at 1.

In the context of the BITCO Program, which was tailored to cover the risks of JBBOC faced, JBBOC's expectation that the umbrella policy provides coverage after the pollution endorsements limits were exhausted is a reasonable expectation.

### iii. JBBOC'S EXPECTATION THAT THE FOLLOW FORM WOULD FOLLOW THE FORM OF THE PRIMARY POLICY TO PROVIDE COVERAGE IS OBJECTIVELY REASONABLE.

The use of the Follow Form in the context of the BITCO Program is a critical consideration when interpreting the application of the exception to the pollution exclusion. Despite this, the term "Follow Form" was not mentioned in the *Recommendations*.

The term "follow form" has significant meaning when found in an insurance policy. A "follow form" excess insurance policy includes language stating it follows the same terms as an underlying policy, including definitions, conditions, exclusions and endorsements. *National Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Company, Inc.*, 272 F. Supp 3d 1099, 1103 (fn. 5) (D. Minn. 2017). A

"following form" excess policy incorporates by reference all terms and conditions of the primary insurance. *Bayou Steel Corporation v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 642 F.3d 506, 509 (5 CA 2011). Unless there is an express exception to the form of the underlying insurance, the excess carrier in a follow-form policy must act in accordance with the underlying insurance policy's terms. *Ticknor v. Rouse Enterprises, LLC,* 2 F. Supp. 3d 882, 889 (E.D. Louisiana 2014); *In Re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1282 (N.D. Alabama, Southern Div. 2004). This legal meaning is consistent with how the average insurance consumer would reasonably interpret its meaning.

Here, the term "follow form" indicates that the pollution exclusion "follows form" with the underlying coverage, i.e., that the pollution coverage provided by the pollution endorsement is backstopped by the Umbrella Policy. JBBOC's expectation that the Follow Form "follows the form" of the Primary Policy and provides coverage after the pollution endorsements coverage is exhausted is objectively reasonable.

## VI. BITCO'S ARGUMENT THAT THE UMBRELLA POLICY COVERAGE IS TRIGGERED AFTER THE LOSS EXCEEDS $1,000,000 IS OUTSIDE THE SCOPE OF THIS CASE AND NOT BE CONSIDERED.

In briefing before the Magistrate, BITCO argued that if the Court found that coverage existed, BITCO's obligation to indemnify JBBOC starts only after the loss exceeds $1,000,000. Doc. 50 at 10. While JBBOC responded to this argument

before the Magistrate, the sole issue before the Court as defined by the pleadings is whether BITCO has an "obligation to defend or indemnify [JBBOC] under the BITCO General Umbrella Policy with respect to … subject oil spill. Doc 1 at 8. Accordingly, if this Court finds that coverage exists, it should not consider BITCO's argument in this regard.

## VII. CONCLUSION

JBBOC requests this Court to reject the Findings and Recommendations from the Magistrate Judge, find the Umbrella Policy provides coverage for the subject spill, and enter judgment for JBBOC on its motion for summary judgment.

DATED this 7th day of February, 2020

/s/ James G. Hunt
JAMES G. HUNT

/s/ Gregory S. Munro
GREGORY S. MUNRO
*Attorneys for Defendant JBBOC*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document was drafted in Times New Roman font, size 14, and that it contains 3,455 words, exclusive of the Court, Caption, Certificate of Compliance, and Certificate of Service.

/s/ James G. Hunt
James G. Hunt
Attorney for Defendant JBBOC

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2020, a copy of the foregoing document was served upon the following persons by CM/ECF delivery**:**

Jesse Beaudette, Esq.
Ryan T. Heuwinkel, Esq.
BOHYER, ERICKSON, BEAUDETTE, & TRANEL, P.C.
283 West Front, Suite 201
Post office Box 7729
Missoula, Montana 59807-7729

John a Husmann
Gusavo A. Otalvora
BATESCAREY LLP
191 N. Wacher, Suite 2400
Chicago, IL 60606

/s/ James G. Hunt
James G. Hunt