# INSURANCE CONSUMER COUNSEL'S COLUMN
## THE REASONABLE EXPECTATIONS DOCTRINE IN MONTANA

*BY PROFESSOR GREG MUNRO* [1]

## Introduction

The scenario is familiar: The insured, present in counsel's office, has suffered a loss involving home, auto or business and has made a claim for insurance. The insured reports being shocked when the insurer said the loss was not covered because of a condition or exclusion or existing coverage was reduced by an offset of limitation of liability clause. Usually, counsel is also surprised by the policy language that defeats or reduces coverage or by the way the insurer applies the policy language to defeat coverage.

However, the insured's belief that the policy covered the loss seems reasonable, and the result appears unfair. Counsel invariably wonders whether the offending insurance policy provision can be deemed void in Montana for violating the reasonable expectations of the insured. After all, the court has protected the rights of insureds by finding violations of the insured's reasonable expectations in such noteworthy cases as *Hardy v. Progressive Specialty Ins. Co.,*[2] (2003) and *Bennett v. State Farm Mutual,*[3] (1993).

Then there is the famous line by Professor Keeton, oft quoted by the Montana Supreme Court,[4] "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." It would be a gleaming sword indeed that would slay an insurance provision solely for violating an insured's reasonable expectations.

While the reasonable expectations doctrine in Montana varies depending on the court you are in, it is alive, well, and under-appreciated. The courts are not clear on its theoretical basis, but use it liberally to damn or bless insurance provisions.

Our inquiry here raises several questions, the biggest being, can we in fact, void an insurance provision in Montana solely because it violates the insured's reasonable expectations? Can the reasonable expectations doctrine be applied absent any finding of ambiguity? Or, if the provision violates the insured's reasonable expectations, is there automatically ambiguity? Can the insured have a reasonable expectation in variance with the policy provisions where there is no ambiguity?

Montana State and Federal Courts have cited reasonable expectations of the insured in perhaps twenty decisions. A review of those decisions reveals that the doctrine is frequently invoked by counsel for insurance consumers and is readily applied by state and federal courts either to void a provision altogether or to resolve an ambiguity in a policy. Nevertheless, reasonable expectations decisions in Montana reflect a lack of clarity about the doctrine resulting in conflicting court pronouncements. Counsel who can advocate for clear application of the doctrine have a fine tool for assuring that their clients get the benefit of the policy for which they bargained.

## Professor Keeton's Concept of Reasonable Expectations

Historically, insureds played a substantial role in formulating their insurance policies. In the coffee houses in London where the shipowners negotiated insurance with the underwriters, the terms were subject to a certain amount of bargaining. As insurance spread to protection of property from fire and to injury and damage arising out of business, auto travel, and aviation, the use of forms drafted by the insurers or their trade organizations became the convention. Today, only the most sophisticated commercial insureds and their brokers are engaged in negotiating anything other than price and levels of coverage. The contracts have become contracts of adhesion which the insured can either accept or reject in total.

As contracts of adhesion, insurance policies were subject to the general contract rule that ambiguity is resolved against the draftsmen. However, Keeton, in studying rights in variance from the insurance policy provisions, noticed the development of a line of decisions in which courts voided unambiguous provisions in favor of the insured based solely on reasonable expectations. Hence, his famous assertion that the objectively reasonable expectations of the insured regarding the terms of the policy "will be honored even though painstaking study of the policy provisions would have negated those expectations."[5] Keeton further said:[6]

Not only should a policyholder's reasonable expectations be honored in the face of difficult and technical language, but those expecta-

tions should prevail as well when the language of an unusual provision is clearly understandable, unless the insurer can show that the policyholder's failure to read such language is unreasonable.

More specifically, and consistent with the Montana court decisions, Keeton said, "An insurer will not be permitted an unconscionable advantage in an insurance transaction, and the reasonable expectations of applicants and intended beneficiaries will be honored.'" For Keeton, the reasonable expectations doctrine is based in unconscionability. Courts used ambiguity merely as a means to reach reasonable expectations, and the majority of decisions finding ambiguity needed reasonable expectations as a ground for the ambiguity. A necessary result of basing reasonable expectations in unconscionability is that courts would differentiate between sophisticated d unsophisticated insureds, limiting recovery for insureds such as lawyers and big business.

While the Montana courts have regularly applied the doctrine of reasonable expectations, the decisions have been inconsistent. However, analysis of the Montana cases and the reasoning of the state and federal courts,' allows us to categorize the cases into roughly three lines: (1) those cases arguably establishing that the "reasonable expectations" doctrine is a stand-alone doctrine based on unconscionability, thus not requiring a contract law finding of ambiguity to trigger its application; (2) those cases that apply the "reasonable expectations" doctrine as an adjunct to contract law, thus requiring an ambiguity in the contract language before looking to the reasonable expectations of the insured; and (3) those cases in which :e is no ambiguity, but the court appears to apply the doctrine and

concludes that the insured's expectations are not reasonable because a clear exclusion from coverage defeats them.

## Classic Keeton: Voiding an insurance provision absent ambiguity solely for violating the insureds reasonable expectations

The Montana Supreme Court has ruled insurance clauses void for violating an insured's reasonable expectations. *Transamerica Ins. Co. v. Royle*, (1983)[8] appears to be the first Montana case to apply the doctrine of reasonable expectations, arguably adopting Keeton's principles verbatim. *Royle* involved a child auto passenger who sued her mother for quadriplegic injuries she suffered as a result of the mother's negligence while driving the family auto. Transamerica's auto policy included a "household exclusion" which excluded coverage "for bodily injury to any person who is related by blood, marriage, or adoption to [the insured], if that person resides in [the insured's] household at the time of the loss." The Federal District Court certified to the Montana Supreme Court the following questions: (1) whether the "household exclusion" was valid, and (2) whether a parent was immune from tort liability to a child.

First, the Montana Supreme Court held that, by enacting the Mandatory Insurance Law, MCA § 33-6-301, "the legislature has expressly outlawed the 'household exclusion." Therefore, the inclusion of the clause violated Montana public policy by violating a statutory provision. Second, the court abrogated parental immunity by holding that a parent is not immune from a child's tort action arising from injury by automobile. The court continued, "In addition, we hold that the household exclusion clause is invalid due to its failure to 'honor the reasonable expectations' of the purchaser of the policy." The

court cited Keeton's famous article and quoted Keeton's principle.[9] The court ended by saying, "This policy is an adhesion contract that justifies this court's consideration of the consumer approach."[10]

The court found no ambiguity in *Royle*, the household exclusion there being quite clear. Hence, *Royle* was the classic Keeton principle case that voided an unambiguous insurance provision for violating the insured's reasonable expectations. Doubters can only speculate whether the court would have ruled the exclusion invalid for violating reasonable expectations if the exclusion had not also been found to be "expressly outlawed" by the Mandatory Insurance Law.

In 1990, the Montana Supreme Court cited *Royle* in finding that a "limit of liability" clause in State Farm's policy's definition of "undersinsured vehicle" violated the insured's reasonable expectations. In *State Farm Mut. Auto. Ins. Co. v. Braun*,[11] a Montana resident insured for UIM with State Farm was killed while riding in an auto operated and insured in Canada. The Canadian policy had BI limits of 200,000, but Canadian tort law limited recovery for death damages to funeral expenses only. The State Farm policy promised to pay damages the insured was "legally entitled to collect" from an underinsured motorist and defined an underinsured vehicle as one whose limit of liability for bodily injury liability was less than the victim's tort damages. The policy required that limit to be "used up by payment of judgments or settlement" before any UIM benefits would be payable. Consequently, State Farm refused any UIM demand on the ground that Braun was not entitled to collect more than funeral expense under Canadian tort law so that the limit of BI liability would never be used up.

The court in Montana held that "legally entitled to collect" in UIM referred only to establishment of fault and not damages, and that, after the fault threshold was met, UIM coverage was governed by contract law as opposed to tort law. The court then resolved the case by concluding that the "limit of liability" language violated the reasonable expectations of the insured. The court said, "The insured could reasonably expect to recover the difference between what he could collect from the tortfeasor's policy and his proven damages up to the policy limits purchased." The court did not find ambiguity, and the case appears to illustrate the Keeton approach. Ironically, the attorney arguing against reasonable expectations for State Farm in Braun was Lyman Bennett who had a reasonable expectations spiritual awakening in the next case in which the doctrine arose in the Montana Supreme Court.

*Bennett v. State Farm Mut. Auto. Ins. Co.*[12] decided by the court in 1993, buttressed *Royle* and *Braun*. There, State Farm issued two auto insurance policies with $100,000 Underinsured Motorist coverage limits to Bozeman attorney, Lyman Bennett and his wife Bonnie. Bonnie was struck and injured as a pedestrian by an underinsured motorist and sought to recover the limits of both policies since she was an insured under each policy. State Farm refused to pay both limits on the basis of an "other insurance" clause limiting coverage to the highest limit of coverage where there are multiple policies.

*Bennett* was originally removed to federal court where Judge Hatfield found the "other insurance" clause ambiguous and then found that voiding the clause comported with the insured's reasonable expectations.[13]

That decision was appealed to the Ninth Circuit, which certified to the Montana Supreme Court the question whether an "other insurance" clause that prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer is void as against public policy?

The Montana Supreme Court rejected State Farm's argument that because the Bennetts had only paid for $100,000 UIM coverage under each of their policies and not $200,000, they could not reasonably expect dual coverage under the unambiguous "other insurance" clause appearing in both policies. The court reasoned that, by "the clear and unambiguous language of State Farm's insurance policy," the UIM coverage was personal to the insured and not dependent on the insured occupying an insured vehicle. Hence, Bennett could reasonably expect coverage up to the limits of both policies for which she was an insured and for which separate premiums had been paid.

In holding the "other insurance" clause that prohibits stacking of the UIM coverage void as against public policy, the court summarily said:

> In *Transamerica v. Royle* (1983), 202 Mont. 173, 656 P.2d 820, we invalidated a "household exclusion" clause in an automobile liability policy because it did not honor the reasonable expectations of the insured. We reaffirmed that decision in *Wellcome v. Home Insurance Co.* (1993), 257 Mont. 354, 358, 849 P.2d 190,193, stating that the "reasonable expectation doctrine is in accord with our strong public policy that insurance is intended to serve a fundamental protective purpose. We affirm it again here.

The *Bennett* court asserted that the promise to pay UIM benefits was clear and unambiguous. On its face, *Bennett* still supports the argument that an insurance provision can be invalidated solely for failing to honor the reasonable expectations of the insured. The *Bennett* court did not say ambiguity was required, nor did it find any ambiguity in the policies at issue.

In the 1995 companion cases of *Leibrand v. National Farmers Union Property* and *Casualty Co.*, and *Cole v. Truck Insurance Exchange,*[14] Federal District Judge Shanstrom, certified to the Montana Supreme Court the question whether amendatory endorsements containing modified household exclusions to auto coverage were valid and enforceable in Montana. The insureds in each case took the positions that the exclusions were void and unenforceable for 1) being unclear and ambiguous, (2) violating their reasonable expectations, and (3) violating the public policy of Montana. The Montana Supreme Court concluded that the policy provisions at issue were unclear, ambiguous, and void. Accordingly, the court declined to reach the issues of whether the provisions violated the insured's reasonable expectations, or were void as contrary to public policy.

Only if the court considered reasonable expectations to be a separate ground for invalidating the modified exclusion did the holding in *Leibrand* make sense. If the court considered reasonable expectations only applicable to resolve ambiguity, there was no reason it could not apply the doctrine to resolve the ambiguity. In effect, the court said that the provision was ambiguous so as to be unenforceable, making a finding of invalidity for violation of reasonable expectations moot. There-

fore, going to the trouble of detailing a separate analysis would appear unnecessary.

Interestingly, while not citing Keeton, the court then discussed unconscionability, the basis of Keeton's theory of reasonable expectations, saying:

> While we decide this case on the basis of the ambiguity in the policy language, we are not unmindful of the insureds' arguments that these contracts are contracts of adhesion; that full coverage for damages suffered by family members is not available on the open insurance market, and that to arbitrarily preclude full coverage for family members, as opposed to all other persons, is unconscionable and void as a matter of public policy, and

therefore, unenforceable, regardless of the future clarity of such an exclusion.

The court concluded that the record was insufficient to evaluate the policies there for unconscionability but allowed that it could be a factor in any future consideration of the validity of the provision. While the court found ambiguity, the decision implicitly supports the proposition that reasonable expectations is a stand-alone doctrine by which a provision can be voided.

The court in *State Farm Mut. Auto. Ins. Co. v. Gibson*,[15] (2007) applied the reasonable expectations doctrine to void an "owned vehicle exclusion" that State Farm drafted in to its Medical Pay coverage. The exclusion, which acted as an anti-stacking provision, had been previously held valid in *Lierboe v. State Farm*[16] (2003).

In *Gibson*, the plaintiffs had paid three separate premiums for Medical Pay coverage on three autos and sought to stack the coverage. As in *Lierboe v. State Farm* (2003), the insurer refused to stack coverage citing the "owned-vehicle exclusion" which provided there was no Medical Pay coverage for any owned auto except the "occupied" auto. The Gibsons argued the exclusion was invalid as against public policy. They apparently made no claim that the provision was ambiguous, and the court confirmed that by stating that, absent ambiguity, a provision will be enforced, and the only exception is if the contract violates public policy.

Because the Gibsons had paid the separate premiums and were the insureds under all three policies, which facts distinguished *Gibson* from *Lierboe*, the court found that the Gibsons had "every expectation of

# Would you like to have your depositions scanned to CDROM? Absolutely free? Share your bank with MTLA.

# TRIALSMITH

MTLA partners with TrialSmith in hosting the on-line MTLA litigation bank. TrialSmith will scan your documents to CDROM for free.  Call 800.443.1757 for details.

Test Drive at www.TrialSmith.com

Formerly DepoConnect.com.  A member service of Montana Trial Lawyers Association.

receiving" the coverage sought and that the exclusion defeated coverage for which valuable consideration had been paid. Consequently, the court voided the owned- vehicle exclusion in the Med Pay coverage as against public policy insofar as it acted as an anti-stacking provision. *Gibson* is one of the clearer cases where the court has used the doctrine of reasonable expectations absent ambiguity to void an insurance provision.

*Hardy v. Progressive Specialty Ins. Co.,*[17] (2003) involved the same basic issues as the 1986 federal *Osborn* case that will be discussed later. As in *Osborn*, the policy defined an underinsured motor vehicle as one with BI limits less than the insured's UIM limit and coupled the UIM coverage with a provision that offset any BI coverage received from the tortfeasor against the UIM benefit due. The result was that there was no situation in which the insured could ver recover the $50,000 UIM shown on the declarations page.

The court in *Hardy* lumped the public policy issues together, saying "[w]e conclude that the offset provision, as well as the definition of underinsured motorist, violate Montana public policy because they create an ambiguity regarding coverage, render coverage that Progressive promised to provide illusory, and defeat the insured's reasonable expectation." The case cited and likely followed *Osborn* but does not shed much light on the law of reasonable expectations except for its indication that defeating the insured's reasonable expectations violates public policy and is a ground for voiding the provision.

The above line of cases establishes that one can void an insurance provision for violating the insured's reasonable expectations and regardless of whether the provision is ambiguous. The problem is that

Montana courts have occasionally insisted that Montana requires ambiguity as a prerequisite to any reasonable expectations inquiry.

## Federal cases requiring ambiguity before applying the reasonable expectations doctrine

In contrast, Montana federal courts began their analysis of the reasonable expectations doctrine via traditional contract law interpretation; where the presence of ambiguity is the threshold issue. In 1986, Federal District Judge Lovell voided provisions of Transamerica Insurance Company's auto policy in *Transamerica Insurance Group v. Osborn*.[18] There, the insurer issued a declarations page promising $50,000 of Underinsured Motorist coverage. However, the policy defined an underinsured motor vehicle as one with BI limits less than the insured's UIM limit and coupled the UIM with a provision that offset any BI coverage received from the tortfeasor against the UIM benefit due. The import of the provisions was that, under no circumstances could the insured ever receive more than $25,000 UIM coverage. (This was the same fact scenario of *Hardy* (2003) discussed above.)

Consequently, Judge Lovell found the UIM definition "ambiguous and inconsistent with the limits of liability expressed on the Declarations Page" and described it as "an inherent ambiguity in the policy which cannot be reconciled." The court held the offending vehicle to be underinsured though its BI policy limits exceeded the UIM limit of Osborn's policy and held the policy definition of underinsured motor vehicle void as against public policy of the State of Montana, saying of that public policy:

These recent decisions indicate the policy behind the laws of Montana with respect to insurance. The underlying theme is the protection of the reasonable expectations of he insured at the time the policy was purchased.

The court in *Osborn* clearly found ambiguity and just as clearly voided the offending provision for violating the reasonable expectations of the insured.

Similarly, in *Wellcome v. Home Ins. Co.* (1991),[19] a trial court imposed a sanction on attorney Page Wellcome and the insurer he represented for violations of the court's orders regarding conduct of *voir dire*, examination of witnesses, and argument. Wellcome's errors and omissions carrier, Home Insurance Company, refused to pay the sanctions citing its policy exclusion for payment of "fines or statutory penalties whether imposed by law or otherwise. . . "

In a federal action against Home Insurance Company, Wellcome sought summary judgment on the grounds (1) that the term "fine" was ambiguous and, (2) that coverage should be required under the reasonable expectations doctrine. Instead, the Federal Court granted summary judgment to Home Insurance Company finding that the exclusion was unambiguous clearly excluding payments for money ordered paid by a trial court for misconduct.

Judge Hatfield discussed Wellcome's invocation of the reasonable expectations doctrine noting that it was recognized in Montana and citing *Transamerica v. Royle*. However, he said of the doctrine that "its precise dimensions have never been refined," and asserted that "it has been utilized in other jurisdictions to resolve ambiguities in insurance

policies in order that the policies comport with the insured's reasonable expectations." He then went on to say:

The rationale upon which the doctrine is based is in accord with Montana's strong public policy of protecting insureds from seeing insurance coverage defeated by an insurer's use of confusing or ambiguous policy language. *See, Rodli v. American Bankers Ins. Co. Of Florida*, 44 Mont.St.Rprtr. 1888 (D. Mont. 1987).

Hatfield said that the idea that the doctrine applied to all coverage disputes regardless of the presence of ambiguity was a minority view and concluded from the *Transamerica v. Royle* case that Montana would follow the majority view, i.e., that the doctrine is only used to resolve ambiguity. It is difficult to see how he reached such a conclusion based on anything the Montana Supreme Court said in *Transamerica v. Royle* which involved no ambiguity and voided a family exclusion for violating the insured's reasonable expectations. Hatfield concluded that Wellcome "may not rely upon the doctrine to create coverage which, by the clear terms of the policy, did not exist."

Hatfield's decision, which was appealed, is a classic example of cases requiring ambiguity before the doctrine can be applied. In other words, the doctrine's only use would be to resolve ambiguities. When the decision was appealed to the Ninth Circuit, that court certified the issues to the Montana Supreme Court, which approached the reasonable expectations issue differently as will be discussed below.

Judge Hatfield had also previously found ambiguity and then applied the reasonable expectations

doctrine to void an "other insurance" clause which acted as an anti-stacking provision in *Bennett v. State Farm Mut. Auto. Ins. Co.*[20] (Ironically, Hatfield's decision was also appealed to the Ninth Circuit and certified from there to the Montana Supreme Court.) After finding the clause ambiguous, Hatfield reasoned that voiding the clause comported with the insured's reasonable expectations.[21] When that decision was appealed to the Ninth Circuit, it certified to the Montana Supreme Court the question whether an "other insurance" clause that prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer is void as against public policy?

While the Montana Supreme Court appeared to be pursuing a Keetonesque policy of voiding insurance provisions solely for violating an insured's reasonable expectations, Federal Judge Hatfield persisted in his apparent belief that Montana law required ambiguity. He did so even though appeals of his decisions were going to the Ninth Circuit which was certifying the questions to the Montana Supreme Court which was not requiring ambiguity to trigger the reasonable expectations doctrine.

In September of 1994, in *Shook v. State Farm Mut. Auto. Ins. Co. of Bloomington*,[22] Judge Hatfield was confronted with another auto accident case in which the question was whether a "modified" family exclusion was invalid either as a matter of public policy or because it violated the insured's reasonable expectations. There, the passenger wife sued her driver husband for negligence resulting in her injury. State Farm's "modified household exclusion" provided that there was no coverage for bodily injury to a family member "to the extent the limits of liability of this policy exceed the limits of liability

required by law." By excluding coverage only for the amounts in excess of the minimum limits required by law, the insurer hoped to avoid having the clause declared invalid as against public policy for not meeting the minimum coverage requirements of the Mandatory Liability Law, MCA § 61-6-301 and the Motor Vehicle Financial Responsibility Act, MCA § 61-6-103 *et. seq.*

In *Shook*, Judge Hatfield, held that "an exclusionary endorsement which operates to limit coverage to the statutory minimum amounts established by MCA § 61-6-301 is not violative of the public policy inherent in Montana's mandatory insurance law." He then addressed whether the modified exclusion was invalid under the doctrine of reasonable expectations which he said, "recognizes an insured is entitled to fully expect the coverage provided by a policy will be consistent with the language of the policy as understood by the average consumer." Hatfield cited *Royle* and *Wellcome* and then said:

Stated another way, the insured has the right to make an informed decision regarding the security he will purchase for himself and his family, and an insurance company, granted the privilege to market its product in the State of Montana, will not be allowed to vitiate that right through the utilization of a policy that creates ambiguity regarding the coverage afforded.

Judge Hatfield asserted that *Royle* "acknowledged the vitality of the 'reasonable expectations' doctrine" but never undertook to define its precise dimensions." He stated that applying the doctrine to all questions of insurance coverage regardless of

ambiguities was the minority view of a limited number of jurisdictions while the majority utilized the doctrine to resolve ambiguities. Next, he set forth several tenets of the law of ambiguity:

[A]mbiguity does not exist because a claimant says so. It can only exist where the wording or phraseology of the contract is reasonably subject to two different interpretations.
* * *
[T]he determination of whether an ambiguity exists in an insurance policy requires an examination of the language utilized from the viewpoint of a consumer of average intelligence, not trained in the law or in the insurance business.
* * *
The determination of whether the expectations of the purchaser of an insurance policy are objectively reasonable must begin with an assessment of the nature of the security which a reasonably prudent layman would understand that the policy is generally designed to provide.
* * *
The language employed in the policy must then be reviewed, in light of the policy's purpose, to determine whether the language is clear and subject to only one meaning or whether, from the perspective of the insured, the language is subject to differing interpretations.
* * *
If the language is capable of more than one construction, an ambiguity exists which must be construed against the insurer.
* * *

[H]owever, if the language employed in an insurance contract, and more particularly, an exclusion, is clear and unambiguous, the language controls, and an expectation which is contrary to the language is not "objectively reasonable."

Judge Hatfield found the modified household exclusion capable of more than one construction and therefore ambiguous. Ultimately Hatfield held:

In view of the emasculating effect the "household exclusion" has upon the security provided by a liability policy, the reasonable consumer would legitimately expect a caveat of that magnitude to be strategically located. The obscure positioning of the exclusion would lead a reasonable consumer to interpret the language of the exclusion in the most reasonably limited manner.

Judge Hatfield decided *Shook* consistently with his view that the rightful role of reasonable expectations is as a remedy when dealing with contractual ambiguity.

As an aside, the author notes that, in doing so, Judge Hatfield curiously claimed not to be persuaded by any argument of "structural ambiguity" while agreeing that "the positioning of the exclusion, in relation to the general coverage provision, lends itself to the creation of the ambiguity in the exclusion." He added, "However, given the indisputable importance of the household exclusion to the average consumer, the structure of the policy takes on added significance," and also said, "The policy,

however, separates the 'household exclusion' both in time and in space and relation to this broad proclamation of liability coverage."

Federal Magistrate Judge Rich Anderson found ambiguity and then resolved it with the reasonable expectations doctrine in *Progressive Casualty Insurance Company v. Owen*,[23] (2006). There, he was confronted with the problem caused when the insurer makes a closely held corporation the only named insured on an auto policy that provides coverage for bodily injury. Arlene Owen was a vice president, secretary and director of a corporation in which she and her husband were the only shareholders. She suffered severe injury when loading hay bales on a semi she was driving that didn't belong to the corporation. The company refused her demand for UIM benefits on the ground that the corporation was the only named insured.

Judge Anderson recited the principle that, "If ambiguity exists, the court may consider the reasonable expectations of the insured." Anderson found that "Simply put, it is impossible to read and understand this policy by examining individual coverages," and concluded that the only way to make sense of it was "to add human named insureds as to those coverages that, by their very nature, can only apply to humans." Ultimately, he held that Arlene Owens, in her positions with the corporation could reasonably have expected that she would be covered for UIM and medical benefits under Progressive's policy with the corporation. The case is a classic application of the school of thought that one must find ambiguity after which the reasonable expectations of the insured can be considered in determining the meaning of the policy.

**An aberrant decision of the Montana Supreme Court requiring ambiguity**

Arguably, as the result of the large number of federal cases where the court only applied reasonable expectations with the presence of contractual ambiguity, the Montana Supreme Court began to file similar case decisions. For the first time, in 1998, the Montana Supreme Court in *Counterpoint, Inc. v. Essex Ins. Co.* [24] declined to apply the reasonable expectations doctrine while using language indicating it would only do so after finding ambiguity. There, the court upheld an exclusion for claims arising out of termination of employment where the operator of a non-profit group home was sued for wrongful discharge. The court refused to consider reasonable expectations or apply rules for interpreting adhesion contracts because it concluded the provision was unambiguous and enforceable as written. The court said:

> This Court has said that "[e]xpectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'" (Citing *Wellcome* and *Stutzman*) Furthermore, we consider special rules of interpreting contracts only when a contract is ambiguous. (Citing *Stutzman*) Even though we have previously recognized an exception to enforcing an unambiguous insurance contract term when the term violates public policy, this exception is not before us. (Citing *Augustine v. Simonson* (1997))[25]

The court's statement was remarkable in light of the line of cases in which it had been applying the doctrine absent ambiguity since *Royle* in 1979. Furthermore, the assertion that the court would only consider the doctrine if it found ambiguity first was contradicted two months later when the court decided *American Family mut. Ins. Co. v. Livengood* [26] 116 (1997) in December 1998.

In *Livengood*, Henninger negligently injured Livengoods while driving a van belonging to her roommate, Frehse. Henninger's personal auto and Frehse's van were both insured under separate policies by American which defended and paid the loss under Frehse's policy since Henninger was an insured by reason of her permissive use. The company refused to pay under the Bodily Injury coverage of Henninger's policy because of its "non-owned auto exclusion" that excluded coverage for "bodily injury or property damage arising out of the use of a vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or any resident of your household."

The District Court granted summary judgment to American, and the Livengoods raised three issues at the Montana Supreme Court: (1) whether the exclusion applied, (2) whether it violated Montana public policy, and (3) whether it violated the reasonable expectations of the insured. After holding that the exclusion applied and was not violative of public policy, the court disposed of the reasonable expectations doctrine argument just as it did in *Stutzman* saying "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage." (Citing *Wellcome*) The reason, of course, is that '[e]xpectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'" (citing *Wellcome*)

Again, the court considered the separate argument that the provision was invalid by reason of violation of the reasonable expectations of the insured, the implication being that a provision can be voided on that basis alone. In neither *Stutzman* nor *Livengood* did the court say that it could not or would not consider the doctrine without an underlying ambiguity in the policy. However, proponents of the ambiguity requirement could argue that statement was implicit in the court's assertion of a "clear exclusion from coverage."

**Cases in which clear exclusions from coverage are deemed to defeat the insured's reasonable expectations**

**A)  Montana Supreme Court Decisions**

The Montana Supreme Court has issued a line of decisions in each of which the court appears to make a reasonable expectations inquiry but concludes that the insured's expectation of coverage cannot be reasonable in the face of a clear exclusion from coverage. The question is whether the court in those cases is applying the reasonable expectations doctrine by making the inquiry absent ambiguity, or whether the cases stand for the proposition that where there is no ambiguity, the reasonable expectations doctrine does not apply. The court appears to be applying the doctrine to conclude that the expectation is not reasonable given a clear exclusion from coverage. If so, the cases further reflect that the court is following Keeton.

In the earliest instance, attorney Wellcome appealed to the Ninth Circuit Judge Hatfield's decision in his case against Home Insurance

Company (discussed above). The Ninth Circuit, in turn, certified to the Montana Supreme Court the questions (1) whether ambiguity in the contract required Home to cover the sanctions, and (2) whether the doctrine of reasonable expectations required Home to do so[27]. Notably, the Ninth Circuit certified ambiguity and reasonable expectations as two separate issues in a case in which trial court judge Hatfield had posited that reasonable expectations could not exist absent ambiguity.

On certification, the Montana Supreme Court held that the policy's exclusion of coverage for sanctions was not ambiguous. At that point, it could have said that the issue of reasonable expectations was moot, there being no ambiguity. Instead, the court concluded that the doctrine of reasonable expectations did not require coverage in the case saying: "Expectations which are contrary to a clear exclusion om coverage are not 'objectively reasonable' as we used that term in *Royle*." The court said, "In neither *Royle* nor *Braun* did we apply the doctrine to require coverage where the clear policy language excluded the coverage" (an assertion that is not true, since, in *Royle*, the court did require Bodily Injury coverage where the household exclusion clearly excepted it.) Nevertheless, the court appeared to apply the doctrine to find that the expectation was not reasonable.

So, what was the basis of *Wellcome*? The court appeared to apply the reasonable expectations doctrine and found that the expectation was not reasonable in the face of a clear exclusion from coverage. Did the court consider the exclusion from coverage clear because Wellcome was a lawyer? Or, was it (as an ambiguity opponent might argue) because one an only consider reasonable expecta-

tions in the face of an unclear (ambiguous), exclusion from coverage? At any rate, the case was the first of a line of reasonable expectations cases in which the courts found no ambiguity, made the reasonable expectations inquiry, and then determined that the insured had no reasonable expectation in the face of a clear exclusion from coverage.

In *Stutzman v. Safeco Ins. Co. of America,*[28] in 1997, the wife who was injured in an auto driven by her husband recovered the Bodily Injury (BI) limit of $100,000 from their auto policy and then asserted a claim to the Underinsured Motorist coverage limit of $100,000. Safeco refused on the ground that the UIM coverage contained an "owned auto exclusion" effectively denying coverage if the person was injured in an auto owned by a relative. The court rejected arguments that there was any ambiguity as to whether a spouse was a "relative," and also held the exclusionary clause did not violate public policy because there is no statutory requirement for UIM coverage in Montana.

The *Stutzman* court then addressed the doctrine under its heading "B. Reasonable Expectations Doctrine," important to our discussion because the court had already found the owned auto exclusion was not ambiguous. The insured's contention was that the provision was void for violation of her reasonable expectations. The court summarily rejected that argument on the ground that "the reasonable expectations doctrine is inapplicable where, as we have found here, the terms of the insurance policy clearly demonstrate an intent to exclude coverage. (Citing *Wellcome*) Rather, '[e]xpectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'" (Citing *Wellcome*)

Arguably, the statement is a principle by which one resolves the issue of whether a provision is void by reason of the insured's reasonable expectations. However, proponents of the theory that ambiguity is a precondition to consideration of the reasonable expectations doctrine could argue that only in the face of an unclear (i.e., ambiguous) exclusion can one consider reasonable expectations.

In the 2000 case of *Babcock v. Farmers Ins. Exchange,*[29] Babcock was towing a borrowed horse trailer that broke loose from her pickup truck and crashed into a fence. Her insurer paid the $500 collision coverage but refused to pay the $4,500 loss to the trailer under the liability coverage because of exclusions to coverage for property owned or transported by the insured or rented or in the charge of the insured. The court found the plain and ordinary language of the exclusions defeated coverage and then discussed reasonable expectations at the end of the decision, asserting that "The doctrine of reasonable expectations does not apply to create coverage where 'the terms of the insurance policy clearly demonstrate an intent to exclude [such] coverage." (Citing *Stutzman*) The court found the liability exclusions "are not ambiguous on their own terms nor are they ambiguous in light of Babcock's policy as a whole. Babcock's policy clearly demonstrates an intent to exclude liability coverage for the damage to the borrowed horse trailer . . ."

The court in *Lierboe v. State Farm Mut. Auto. Ins. Co.,*[30] in 2003, enforced State Farm's "no coverage" provision in its Medical Pay coverage which provision contained an exclusion for injury sustained while occupying an owned auto "not insured under this coverage." Hence, the

exclusion limited the insured's Med Pay coverage to that on the auto in which she was riding, in effect acting as an anti-stacking provision. The court found the exclusion "clear and unambiguous" and rejected Lierboe's reasonable expectations argument on the ground that "[e]xpectations which are contrary to a clear exclusion from coverage are not objectively reasonable." (Citing *Stutzman* and *Wellcome*) The court said there was no coverage on any vehicle not occupied, so there was no stacking issue. It also said that Lierboe had no reasonable expectation of coverage under the second policy, because she did not qualify as an insured under more than one Med Pay coverage. Again, the inquiry appears to have been whether the provision was void for violating reasonable expectations, not whether reasonable expectations could resolve an ambiguity.

In *Generali-U.S. Branch v. Alexander,*[31]73 P.3d 800. (2004) the court seemed to recognize the fine line between ruling the reasonable expectations doctrine inapplicable in the face of a clear exclusion and finding the insured's expectations unreasonable in the face of a clear exclusion:

> We have held that "[e]xpectations that are contrary to a clear exclusion from coverage are not 'objectively reasonable,' although the "reasonable expectations doctrine" does not apply in situations "where clear policy language excluded the coverage."

In *Hamilton v. Trinity Universal Ins. Co.* [32] (2006), the Montana Supreme Court upheld an "owned vehicle" exclusion where it was alleged to violate reasonable expectations of the insured. There, Zack Hamilton, age 23, was injured while driving his uninsured Toyota pickup truck. He lived with his parents who insured three vehicles with Trinity under policies providing UIM coverage. After settling for the tortfeasor's BI limits, he claimed the UIM benefits under his parents' policies, and Trinity refused on the basis of the owned vehicle exclusion.

The Hamiltons claimed the exclusion should be invalidated as contrary to their reasonable expectations. The court specifically noted that they were not claiming it was ambiguous but complained instead that a person had to look to several places in the policy to determine whether coverage was provided. The court refused the argument of invalidity on the twin grounds that (1) the reasonable expectations doctrine is inapplicable in the face of a clear exclusion from liability, expectations contrary to a clear exclusion are not objectively reasonable, and (2) "it is not objectively reasonable for an insured to expect to receive underinsured motorist coverage for a vehicle for which he or she has not purchased any automobile insurance."

Finally, in *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill,*[33] State Farm's Medical Pay coverage had an exclusion from coverage "to the extent workers compensation benefits are required to be payable." Newbury was injured in a work related vehicle/pedestrian accident. State Farm refused to pay his $17,230 in medicals on the grounds that work comp had paid them so that they were clearly excluded.

The Montana Supreme Court found the exclusion unambiguous and clearly demonstrated an intent to exclude coverage so that the requirements of the reasonable expectations doctrine could not be met. Notably, the court treated reasonable expectations as a separate issue after it had already held that the exclusion was unambiguous. Once again, the court could have said it could not consider the doctrine if there was no ambiguity. Instead, it said that "expectations that are contrary to a clear exclusion from coverage are not objectively reasonable."

**B) Federal Court Decisions**

A strong federal court decision by Judge Molloy, *Hanson v. Employers Mutual Casualty Co,*[34] is consistent with the holdings of the Montana Supreme Court. The case involved the frustrating situation where the insurer of a closely held family corporation issues a policy providing coverages for "bodily injury" but makes the corporation, which cannot suffer "bodily injury" the named insured. In *Hager v. American West Insur. Co.,*[35] Judge Hatfield in 1989 held, "Where an automobile liability policy containing the 'family member' terminology has been issued to a closely held corporation, it is entirely legitimate to conclude the readily identifiable officers and shareholders of that corporate entity fall within the purview of that terminology."

Hanson, who was injured as a pedestrian by an underinsured motorist was a principal in a family closely held corporation. To the insurer's assertion that he was not an insured, Hanson argued that coverages applying only to "bodily injury" cannot be suffered by a corporation, so that a reasonable consumer would have a reasonable expectation that the coverage would apply to the family members or officers involved in the corporation.

Without finding any ambiguity, Judge Molloy applied the reasonable

expectations doctrine but found that, because Hanson was a pedestrian, and the policy only provided UM/UIM to other than named insureds if they were occupying an insured vehicle, Hanson could have no reasonable expectation of coverage. In fact, Molloy said "Thus, the clear language of the insurance contract rebuts Plaintiffs' reasonable expectations argument, which is not saved by resort to policy arguments." (The court found for plaintiff, however, on other grounds.) This was a case in which, finding no ambiguity, the judge made a reasonable expectations inquiry and determined that there was no ground for the insured's expectation that the policy would provide UIM coverage to pedestrians. However, the case allows reasonable expectations inquiry without any ambiguity.

## Conclusion

Analyzing reasonable expectations cases in Montana reveals that typically "reasonable expectations" is the last issue discussed in court decisions. This may be because counsel advocates the doctrine last in briefs, perhaps reflecting a lack of certainty about the doctrine's effectiveness. The confusion engendered because the federal courts' require ambiguity while the Montana Supreme Court does not, makes for inconsistency, lack of clarity, and absence of assuredness for counsel.

Counsel need to keep clarity about the reasonable expectations doctrine by presenting the doctrine's base in unconscionability and not ambiguity. Insurance policies are contracts of adhesion. Hence, it is imperative that courts assess the nature of the security which a reasonably prudent layman would understand the policy is generally designed to provide and act to protect that expectation in the face of technical language that defeats it. To achieve an equitable result, the court needs to watch for unconscionable advantage and give up the search for ambiguity which only yields tortured and unpredictable decisions. To achieve this change, advocates must have a clear understanding of the reasonable expectations doctrine and recognize its importance and utility. The Montana Supreme Court in *Counterpoint, Inc. v. Essex Ins. Co.* (1998) muddled the doctrine when it indicated the belief that it had been requiring ambiguity even though a line of decisions issued since 1979 said otherwise. The federal courts, which are supposed to be applying Montana law, appear oblivious to the Montana Supreme Court decisions on the doctrine.

If "reasonable expectations" did not apply absent ambiguity, what would stop an insurer from drafting clear but heinous exclusions to optional coverages like UIM and Med Pay? Public policy protects the mandatory coverages of BI and UM, because an exclusion must not infringe the coverage required by statute. But, the public policy protecting UIM and Med Pay is the doctrine of reasonable expectations of the insured as set out by Professor Keeton and by the Montana Supreme Court in *Transamerica v. Royle* in 1979.

### ENDNOTES

1. The author thanks his research assistant, 2L Christopher Orman, for research and comment and Pat Sheehy

2. 315 Mont. 107, 67 P.3 892 (2003).

3. 261 Mont. 386, 862 P.2d 1146 (1993).

4. Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv. L. Rev. 961 967 (970).

6 *Id.*

7. *Id.*7 *Id.* at 961.

8. 202 Mont. 173, 656 P.2d 820 (1983).

9. *Id.* at 181, 656 P.2d at 824; *quoting* Keeton, P.2d at 824.

11. 243 Mont. 125, 793 P.2 253 (1990)

12. 261 Mont. 386, 862 P.2d 1146 (1993).

13. 758 F.Supp 1388 (D Mont. 1991).

14. 272 Mont. 1, 898 P.2d 1220 (1995).

15. 337 Mont. 509, 163 P.3

16. 316 Mont. 382, 73 P.3 800 (2003).

17. 315 Mont. 107, 67 P.3 892 (2003).

18. 627 F.Supp. 1405 (D Mont. 1986).

19. 758 F.Supp. 1375 (D Mont. 1991).

20. 758 F.Supp. 1388 (D Mont. 1991).

22. *Id.*

22. 872 F.Supp. 768 (D Mont. 1994).

23. 456 F.Supp.2d 1205 (D Mont. 2006).

24. 291 Mont. 189, 967 P.2 393 (1998).

25. 283 Mont. 259, 940 P.2 26. 292 Mont. 244, 970 P.2d 1054 (1998).

27. 257 Mont. 354, 849 P.2 190 (1993).

28. 284 Mont. 372, 945 P.d 32 (1997).

29. 299 Mont. 407, 999 P.2 347 (2000).

30. 316 Mont. 382,

31. 320 Mont. 450, 87 P.3d 1000 (2004).

32. 465 F.Supp.2d 1060 (D Mont. 2006).

33. 2008 MT 156, 200 WL 1904397.

34. 336 F.Supp.2d 1070 (D Mont. 2004).

35. 732 F.Supp. 1072 (D.Mont. 1989). ◆

> *"I consider trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution."*
> Thomas Jefferson to Thomas Paine, 1789