John A. Husmann
Gustavo A. Otalvora
BATESCAREY LLP
191 N. Wacker, Suite 2400
Chicago, IL   60606
Telephone: (312) 762-3100
Facsimile:  (312) 762-3200
Email: jhusmann@batescarey.com
Email: gotalvora@batescarey.com
              - and -
Jesse Beaudette
Ryan T. Heuwinkel
BOHYER, ERICKSON, BEAUDETTE & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana  59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email:  mail@bebtlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## GREAT FALLS DIVISION

| | | |
|---|---|---|
| BITCO GENERAL INSURANCE CORPORATION, | ) ) ) | Cause No. CV-18-00087-BMM-JTJ |
| Plaintiff, | ) ) | THE HON. BRIAN MORRIS |
| -vs.- | ) ) | **BITCO GENERAL INSURANCE** |
| J. BURNS BROWN OPERATING CO., | ) ) ) | **CORPORATION'S RESPONSE TO J. BURNS BROWN OPERATING CO.'S OBJECTIONS TO THE** |
| Defendant. | ) ) ) | **MAGISTRATE'S FINDINGS AND RECOMMENDATIONS** |

Plaintiff BITCO General Insurance Corporation ("BITCO General"), pursuant to Local Rule 72.3, respectfully submits this Response to Defendant J. Burns Brown Operating Co.'s ("JBBOC") Objections to the Magistrates Findings and Recommendations (Doc. 61).

# Table of Contents

I.      INTRODUCTION ...........................................................................................4

II.     ARGUMENT ................................................................................................5

        A.      The Umbrella Policy's Pollution Exclusion Clearly and
                Unambiguously Applies to Exclude Coverage for the Underlying
                Clean-Up Costs .........................................................................................6

                1.      The Primary Policy Constitutes "Underlying Insurance"
                        Under the *First* Prong of the "Underlying Insurance"
                        Definition .....................................................................................7

                2.      The "Underlying Insurance" at Issue (the Primary Policy)
                        Does Not Provide Coverage for the Clean-Up Costs at the
                        Limits Shown in the Umbrella Policy's Schedule of
                        "Underlying Insurance" ($1 Million) ...........................................8

        B.      The Doctrine of Ambiguity Has No Application to the Umbrella
                Policy and Its Pollution Exclusion .........................................................9

        C.      The Reasonable Expectations Doctrine Does Not Apply Because
                JBBOC's Alleged Expectations Contradict the Clear and
                Unambiguous Terms of the Pollution Exclusion ...................................13

        D.      Alternatively, the Umbrella Policy Attaches Excess of $1 Million ......18

III.    CONCLUSION ............................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Brodie*, No. CV 19-95-M-DLC-KLD, 2019 WL 6338133 (D. Mont. Nov. 27, 2019) .......... 19

*Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861 (Mont. 2013) ............................... 5, 9, 14

*Friends of the Wild Swan v. Christiansen*, 955 F. Supp. 2d 1197 (D. Mont. 2013) ................... 19

*Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666 (Mont. 2009) ............................................. 14, 17

*Greenhow v. Secretary of Health & Human Services*, 863 F.2d 633  (9th Cir. 1988) ............... 19

*James v. Chicago Title ins. Co.*, 339 P.3d 420 (Mont. 2014) ............................................... 5, 15

*Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664 (Mont. 2017) ........... 5

*Maguire v. Teletech Customer Care Mgmt.*, 2011 WL 6826419 (D. Mont. Dec. 28, 2011) ..................... 19

*Marshall v. Chater*, 75 F.3d 1421 (10th Cir. 1996) ................................................................. 19

*Nat'l Union Fire Ins. Co. v. Donaldson Co., Inc.*, 272 F. Supp. 3d 1099 (D. Minn. 2017) ...................... 16

*Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008) .......... 5, 14

*Phoenix Ins. Co. v. Ed Boland Construction, Inc.*, 229 F. Supp. 3d 1183 (D. Mont. 2017) ........................ 5

*Robb Evans & Associates, LLC v. United States*, 850 F.3d 24 (1st  Cir. 2017) ......................................... 19

*State Farm Mut. Auto. Ins. Co. v. Braun*, 793 P.2d 253 (1990) ................................................ 15

*Stonehocker v. Gulf Ins. Co.*, 368 P.3d 1187 (Mont. 2016) ...................................................... 15

*Transamerica Ins. Co. v. Royle*, 656 P.2d 820 (Mont. 1983) .................................................. 15

*Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 326 Mont. 174 (2005) ............................. 5

*Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819 (Wisc. 2012) .................................... 16, 18

## I.   <u>INTRODUCTION</u>

In the Court's Findings and Recommendations, Magistrate Judge Johnston correctly concluded that the BITCO Umbrella Policy's pollution exclusion ("Pollution Exclusion") clearly and unambiguously excludes coverage for the Montana Department of Environmental Quality's demand that JBBOC cleanup and remediate the subject oil spill ("Clean-Up Costs").   The Pollution Exclusion contains one exception: the exclusion does not apply if JBBOC has "underlying insurance" that covers the pollution at issue "***at the limits shown***" in the Umbrella Policy's Schedule of Underlying Insurance.   The only issue in dispute is whether this exception to the Pollution Exclusion applies.   As set forth below, the separate BITCO Primary Policy issued to JBBOC—which is not at issue in this litigation—constitutes "underlying insurance" that covers the Clean-Up Costs under the Primary Policy's contamination and pollution coverage endorsement ("Contamination Coverage Endorsement").   However, that "underlying insurance" is subject to a $100,000 sublimit and therefore does not provide coverage for the Clean-Up Costs "***at the limits shown***" in the Umbrella Policy's Schedule of Underlying Insurance ($1 million). Therefore, the exception to the Pollution Exclusion is not satisfied, and JBBOC can never meet its burden of proving that the exception applies.

In its prior briefs, JBBOC ignored the key "***at the limits shown***" language and instead relied on a series of factually and legally meritless arguments in an attempt to obfuscate what is clear and unambiguous policy language.   In its Objection, however, JBBOC has abandoned the majority of these meritless arguments and instead asserts new arguments in support of its ambiguity and reasonable expectations theories.   These additional arguments are equally meritless, and JBBOC fails to provide any authority to contradict the Court's Recommendations.

Accordingly, JBBOC still falls well short of meeting its burden of demonstrating coverage under the Umbrella Policy.

## II.    ARGUMENT[1]

The interpretation of an insurance contract is a question of law for the Court to decide. *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008). When interpreting an insurance policy, Montana **courts read insurance policies as a whole and reconcile the policy's various parts to give each part meaning** and effect. *Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017). Montana courts "accord the usual meaning of the terms and the words in an insurance contract, and [they] construe them using common sense." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 865 (Mont. 2013). Under Montana law, a court cannot create an ambiguity where none exists. *Newbury*, 184 P.3d at 1025. In addition, a court may not distort policy language in the face of a reasonable interpretation of the policy provision, and a court may not adopt a construction that would "do violence" to the language of the policy. *James v. Chicago Title Ins. Co.*, 339 P.3d 420, 424 (Mont. 2014).

Further, if an insurer establishes the applicability of a coverage exclusion, the insured then has the burden to prove that an exception to that exclusion applies. *Phoenix Ins. Co. v. Ed Boland Construction, Inc.*, 229 F. Supp. 3d 1183, 1188 (D. Mont. 2017); *see also Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 326 Mont. 174, 185, 186 (2005) (holding that

---

[1] Pursuant to Local Rule 56.1(c), the parties entered into a Statement of Stipulated Facts (Doc. 38), upon which the parties relied in support of their respective cross-motions for summary judgment. Those pertinent facts are summarized in BITCO General's Brief in Support of Cross-Motion for Summary Judgment, which are incorporated herein, along with BITCO General's briefs in support of its Cross-Motion for Summary Judgment (Docs. 44, 47) and its brief in response to JBBOC's Cross-Motion for Summary Judgment (Doc. 50).

the insured failed to meet its burden that the "sudden and accidental" exception to the pollution exclusion applied).

**A.      The Umbrella Policy's Pollution Exclusion Clearly and Unambiguously Applies to Exclude Coverage for the Underlying Clean-Up Costs**

The Pollution Exclusion that is the subject of this case excludes coverage for pollution liability but contains one exception: the exclusion does not apply if there is "underlying insurance" that covers the pollution at issue "at the limits shown" in the Umbrella Policy's Schedule of Underlying Insurance.  (Doc. 38-3, at pg. 40.)  If this "underlying insurance" exception applies, then the Umbrella Policy is subject to (or "follows") the coverage limitations set forth in that "underlying insurance."  (*Id.*)  Specifically, the Pollution Exclusion provides as follows:

It is agreed that this policy does not apply to:

(1)      "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2)      Any loss, cost, or expense arising out of any:

(a)      Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)      "Claim" or "suit" on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

***This exclusion does not apply if insurance for such*** "bodily injury," ***"property damage"*** or "personal and advertising injury" ***is provided by "underlying insurance" at the limits shown in the schedule of "underlying insurance."*** Coverage for such "bodily injury," "property damage" or "personal and advertising injury" is subject to the same limitations as the "underlying insurance."

* * *

*Id.* (italics added).

Here, JBBOC conceded that the Clean-Up Costs at issue fall within the scope of the Pollution Exclusion.  Therefore, the only issue is whether the exclusion's "underlying insurance" exception applies.  To prove that the exception applies, JBBOC must demonstrate that: (1) JBBOC has "underlying insurance" that provides coverage for the Clean-Up Costs, and (2) that said "underlying insurance" provides coverage for the Clean-Up Costs at the limits shown in the Umbrella Policy's schedule of "underlying insurance."  (*Id*.)  As set forth below, the first requirement is met by the Primary Policy.  However, as the Court correctly found, the second requirement is not met, and thus the "underlying insurance" exception does not apply. Accordingly, the Pollution Exclusion applies to bar coverage for the underlying Clean-Up Costs.

1.    **The Primary Policy Constitutes "Underlying Insurance" Under the *First* Prong of the "Underlying Insurance" Definition**

JBBOC does not and cannot dispute that the Primary Policy constitutes "underlying insurance."  The Umbrella Policy defines "Underlying Insurance" as follows:

> "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy.  "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.  Such other insurance includes any policies issued to renew or replace these policies during the policy period of this insurance provide:
>
> a.   At least the same limits of insurance; and
> b.   At least the same coverage.
>
> The coverage and limits stated in the Declarations for underlying insurance, and any renewals or replacements thereof, apply whether or not such is collectible.

(Doc. 38-3, at 31.)

Therefore, the Umbrella Policy provides a two-prong definition of "underlying insurance," which is defined as either (1) "the coverage(s) afforded under insurance policies *designated in the schedule of 'underlying insurance'* on the Declarations Page of this policy," *or* (2) "*any other insurance* available to the insured . . . ."   (*Id.* (emphasis added)).   It is undisputed that the Umbrella Policy's Schedule of Underlying Insurance—which is found on the Umbrella Policy's Declarations Page—lists the Primary Policy, and it is undisputed that the Primary Policy provides coverage for the Clean-Up Costs (subject to the $100,000 sublimit of its Contamination Coverage Endorsement).   (*Id.* at 6; Doc. 38 ¶¶ 21-23.)   Therefore, the Primary Policy—as amended by the Contamination Coverage Endorsement—falls within the first prong of the "underlying insurance" definition, and there is no need to consult the second prong of the definition.   Indeed, in its Objection, JBBOC does not dispute that the Primary Policy is the "underlying insurance" at issue.

> **2.     The "Underlying Insurance" at Issue (the Primary Policy) Does Not Provide Coverage for the Clean-Up Costs at the Limits Shown in the Umbrella Policy's Schedule of "Underlying Insurance" ($1 Million)**

JBBOC did not and cannot meet its burden on the second requirement of the "underlying insurance" exception: that the "underlying insurance" (the primary policy) provide coverage for *such* property damage (the Clean-Up Costs) *at the limits shown in the Umbrella Policy's schedule of "underlying insurance*."   (Doc. 38-3, at 40.)   Here, the Umbrella Policy's Schedule of Underlying Insurance lists the Primary Policy with limits of *$1 million* per "occurrence" (and $2 million in the general aggregate).   (*Id.* at 6.)   However, these limits do not apply to the Clean-Up Costs (or any similar pollution liability).   Rather, the Primary Policy—by way of the Contamination Coverage Endorsement—provides an aggregate sublimit of *$100,000* for the Clean-Up Costs.   (Doc. 38 ¶¶ 21-23.)   The Schedule of Underlying Insurance does not list the

Contamination Coverage Endorsement or its $100,000 sublimit, and thus the "underlying insurance" exception can never apply.  (*See* Doc. 38-3, at 6.)

The exception plainly states that the Pollution Exclusion does not apply if the "property damage" at issue is covered by "'underlying insurance' *at the limits shown* in the schedule of 'underlying insurance.'"  *Id*. at 40 (emphasis added).  Because the term "underlying insurance" is immediately qualified by the phrase "*at the limits shown* in the schedule of 'underlying insurance,'" that phrase simply cannot be ignored and must be awarded its clear and logical meaning.   The only logical interpretation of that phrase is that the exception applies only if the "underlying insurance" (the Primary Policy) provides coverage for the Clean-Up Costs and the applicable limits of that insurance are the same as the limit of insurance shown in the Umbrella Policy's Schedule of Underlying Insurance.  Accordingly, the exception would apply here if, for example, the Primary Policy provided coverage for the Clean-Up Costs of up to $1 million per occurrence (and $2 million in the aggregate), or if the Schedule of Underlying Insurance listed the Contamination Coverage Endorsement and its $100,000 sublimit.  However, neither of these are the case, and thus the Pollution Exclusion applies to bar coverage for the Clean-Up Costs.

**B.**     **The Doctrine of Ambiguity Has No Application to the Umbrella Policy and Its Pollution Exclusion**

JBBOC fails to meet its burden that the Pollution Exclusion is ambiguous because it does not and cannot offer a reasonable alternative interpretation of the Pollution Exclusion that gives effect to all of the language of the Exclusion.   Under Montana law, an insurance contract is considered ambiguous only if it is "*reasonably* subject to two different interpretations."  *Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 865-66 (Mont. 2013) (emphasis added).  Whether a provision of an insurance contract is "reasonably susceptible to two different interpretations," is determined from "the viewpoint of a consumer with average intelligence, but

untrained in the law or the insurance business." *Id.*  However, a provision is not ambiguous "just because a claimant says so or just because the parties disagree as to [its] meaning . . . ." *Id.* Accordingly, the Montana Supreme Court has admonished that courts must not "'seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract.'"  *Id.*  JBBOC's interpretation runs afoul of the Montana Supreme Court's instructions.

In its prior briefs, JBBOC failed to provide any alternative interpretation of the "underlying insurance" exception—let alone a reasonable one—as required to demonstrate an ambiguity.  Instead, JBBOC attempted to circumvent an interpretation of the clear and relevant policy language by pointing to irrelevant provisions in the Umbrella Policy, and misleadingly citing to wholly inapposite cases  (such as the *Marjo* case).  It is only now, in JBBOC's ***fourth*** submission to the Court, that JBBOC for the first time bothers to provide what it considers is an alternative interpretation of the operative language.  JBBOC's first attempt at an alternative interpretation, however, involves a tortured and confusing **_ten_**-step process, which involves "consulting" the definition of "underlying insurance" on **two** separate occasions, and which misguidedly relies on the limits set forth in the Primary Policy's Declarations Page.  As set forth below, this is a text-book example of a strained attempt to create ambiguity where none exists.

JBBOC erroneously contends that the definition of "underlying insurance" directs the insured to the ***Primary*** Policy's declarations page.  (Doc. 61, at 9-10.)  This argument, however, is directly contravened by clear policy language.  At no point in the definition is there any reference to the declarations page in the Primary Policy.  Quite the opposite, the first sentence of the definition plainly states that "underlying insurance" means "policies designated in the schedule of 'underlying insurance' on the Declarations Page ***of this policy***."  (Doc. 38-3, at 31

(emphasis added)).  Clearly, the phrase "of this policy" can only refer to the Umbrella Policy—i.e., the Declarations Page of the Umbrella Policy.  Indeed, a primary policy—by definition—does not have designated "underlying insurance" because it is primary to any other insurance purchased by the insured and therefore would never contain a schedule of underlying insurance.

JBBOC, however, points to the last (stand-alone) sentence in the definition of "underlying insurance," which states that: "The coverage and limits stated in the Declarations for underlying insurance, and any renewals or replacements thereof, apply whether or not such is collectible."  (Doc. 61 at 9-10).  According to JBBOC, the sentence's reference to "Declarations for underlying insurance" is a reference to the declarations of the Primary Policy.   (*Id*.).  This sentence, however, clearly references the declarations page of the ***Umbrella*** Policy and not the ***Primary*** Policy.  This is made clear by the very first sentence of the definition, which as noted above clearly references the declarations page of the ***Umbrella*** Policy, and there is nothing anywhere in the definition to suggest that the second reference to "Declarations" suddenly and without explanation shifts from a reference to the declarations of the Umbrella Policy to the declarations in the ***Primary*** Policy.  JBBOC's strained interpretation is, as a matter of law, unreasonable, and the only logical interpretation of the definition is that the last sentence is also referencing the Umbrella Policy's declarations as BITCO General maintains.

Further, even taking the stand-alone sentence by itself, it is illogical to read it as directing the insured to the Declarations in the ***Primary*** Policy because that sentence says "limits stated in the Declarations *for* 'underlying insurance.'"  (Doc. 38-3, at 31.)  The operative word here is "for," as its placement directly adjacent to the phrase "underlying insurance" necessarily means that the sentence can only be logically interpreted as referencing limits *for* "underlying insurance" that are stated in the Umbrella Policy's declarations.  JBBOC's interpretation is

grammatically incorrect and requires the reader to ignore basic syntax.  If the sentence were meant to refer to the limits set forth in the Primary Policy's declarations, it would have stated "Declarations **_in_** 'underlying insurance'" or "Declarations **_of_** 'underlying insurance'"—which it clearly does not.[2]

JBBOC also interprets the exception as applying if the limits set forth in the Primary Policy's declarations page are the same as the limits set forth in the Umbrella Policy's Schedule of Underlying Insurance.  This leads to an absurd result because, under JBBOC's interpretation, the exception would **_always_** apply if the Primary Policy's declarations page sets forth the general policy limits, which is true in every policy.  It would not matter if—as is the case here—the Primary Policy provided lower limits for the "property damage" at issue.  Nor would it matter if the Primary Policy outright excluded coverage for the property damage at issue, so long as the limits on both declarations pages are the same.  JBBOC's interpretation thus renders the Pollution Exclusion pointless.

JBBOC's interpretation reads out of existence clear policy language and fails to read the policy as a whole—in direct contradiction with Montana's clear canons of insurance policy interpretation.  As such, JBBOC does not and cannot offer this Court a reasonable interpretation of the Pollution Exclusion that reads the policy language as a whole and gives effect to all of its parts.  *See Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017) (Montana courts read insurance policies as a whole and reconcile the policy's various parts to give each part meaning and effect).  BITCO General's interpretation of this language is the

---

[2]  JBBOC also ignores the fact that this stand-alone sentence in the "underlying insurance" definition is irrelevant to the Pollution Exclusion, as it relates to the Umbrella Policy's attachment point—a completely separate issue.  (*See* Doc. 50, at 11 (discussing the Umbrella Policy's attachment point)).

only interpretation that gives effect to all of the words in the policy, and therefore should be adopted by this Court.

Finally, contrary to JBBOC's contention, BITCO General has never argued that that the Court needs to analyze the "the entire [primary] policy, including endorsements" to determine whether the exception applies.  Obviously, relevant to the correct analysis is whether the Primary Policy provides $1 million in policy limits for the "property damage" at issue (which is not the case).  However, this does not require an analysis of the Primary Policy nor does it involve the interpretation or incorporation of the Primary Policy's terms, conditions, or exclusions.  JBBOC fails to cite any case law supporting the argument that a court cannot look to the primary policy to determine the limits it provides for the Clean-Up Costs, particularly here where the Primary Policy's limits are relevant to the exception.[3]

**C.**     **The Reasonable Expectations Doctrine Does Not Apply Because JBBOC's Alleged Expectations Contradict the Clear and Unambiguous Terms of the Pollution Exclusion**

Similarly, JBBOC cannot demonstrate that the reasonable expectations doctrine applies to invalidate the Pollution Exclusion.[4]  Under Montana law, the reasonable expectations doctrine provides that the objectively reasonable expectations of an insured will be honored.  *Fisher v.*

---

[3] Notably, JBBOC contradicts itself by arguing that it is improper for the Court to look to the Primary Policy to determine whether the exception applies, while also arguing in its Objection that the Pollution Exclusion should follow the Primary Policy and that the Umbrella Policy directs the insured to the Primary Policy's Declarations.  (Doc. 61, at 10, 11.)

[4] The Court's Findings and Recommendations initially noted that JBBOC's briefs argued, among other things, that the reasonable expectations doctrine applied to the Pollution Exclusion, and Magistrate Judge Johnston ultimately found that the Pollution Exclusion barred coverage for the Clean-Up Costs, granted BITCO General's cross-motion for summary judgement, and denied JBBOC's cross-motion for summary judgment.  (*See* Doc. 60, at 3-4, 7-10.)  Therefore, contrary to JBBOC's contention, the Court did in fact address and ultimately reject JBBOC's argument on the reasonable expectations doctrine.

*State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013).  However, expectations that are contrary to a clear exclusion from coverage are not "objectively reasonable," and thus the doctrine does not apply if the terms of the policy at issue "clearly demonstrate an intent to exclude coverage." *Id.*

As set forth above, the Pollution Exclusion applies to exclude coverage for the underlying Clean-Up Costs, and JBBOC's interpretation to the contrary ignores the clear and unambiguous terms of the Umbrella Policy (and its Pollution Exclusion).   Therefore, JBBOC's alleged expectation that the Umbrella Policy would follow the Primary Policy's Contamination Coverage Endorsement is "unreasonable" as a matter of law.  *See Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 676 (Mont. 2009).

Moreover, the undisputed facts demonstrate that an average insured would not reasonably expect for the Umbrella Policy to provide coverage for pollution liability.  Nothing in Montana law or public policy required JBBOC to obtain excess coverage for pollution liability. Moreover, the Primary Policy form excludes coverage for pollution liability, but JBBOC purchased pollution coverage for the Primary Policy via an additional endorsement.  The limits provided by that pollution coverage were a fraction of the limits provided by the Primary Policy for non-pollution liability, a fact reflected in the premium paid for the additional pollution coverage.  (*See* Doc. 38-2 and Doc. 38-3.)  JBBOC could have paid for additional pollution coverage under either the Primary Policy, or it could have sought an umbrella policy that provided pollution coverage in the marketplace, but it chose not to despite the fact that the Umbrella Policy contains its own Pollution Exclusion.  Therefore, nothing in the Umbrella Policy or Montana law suggests that JBBOC had a reasonable expectation of coverage for pollution liability under the Umbrella Policy.  *See Newbury*, 184 P.3d at 1027 (stating that parties

to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional coverage, rather than mandatory coverage).

In contrast, JBBOC cannot point to any case law that supports nullifying the Pollution Exclusion.  Indeed, some of the cases on which JBBOC relies declined to apply the reasonable expectations doctrine, and all of JBBOC's cases are factually inapposite in that they involve completely different exclusions, they involve adhesion contracts, and/or the application of the exclusion required the insured to be familiar with related statutes.  *See, e.g.*, *Stonehocker v. Gulf Ins. Co.*, 368 P.3d 1187, 1191 (Mont. 2016) (rejecting the insured's argument that there was a reasonable expectation that an employee was an "insured" under the employer's commercial auto policy, because a reasonable person would not take the fact that the insured corporation engages in business of operating a guest ranch to mean that an entity other than a corporation is insured under the policy); *James v. Chicago Title Ins. Co.,* 339 P.3d 420, 424 (Mont. 2014) (rejecting insured's argument that the reasonable expectations doctrine applied to title insurance that covered loss arising out of an insured not having a "right of access"); *Transamerica Ins. Co. v. Royle*, 656 P.2d 820, 824 (Mont. 1983) (addressing the issue of whether an insurance policy's household exclusion—which excluded coverage for injury to the insured's relative—was invalid because the policy was an adhesion contract and Montana law required motorists to carry insurance against loss resulting from liability imposed by law for injury suffered by any person); *State Farm Mut. Auto. Ins. Co. v. Braun*, 793 P.2d 253, 255-6 (Mont. 1990) (holding that an insurance provision that limited coverage to damages the insured was "legally entitled to collect" was enforceable because a reasonable average insured is not going to be aware that Canadian law restricts damages severely in relation to Montana law).

In its Objection, JBBOC has taken some of the failed arguments it previously made in connection with its ambiguity argument and—for the first time—used them in support of its reasonable expectations argument.  As set forth below, these arguments are just as meritless in the context of the reasonable expectations doctrine.

First, JBBOC contends that it is objectively reasonable for an insured to expect coverage under an umbrella policy after the primary policy limits have been exhausted.  (Doc. 61, at 15.) This interpretation ignores the clear language of the Umbrella Policy.  The Umbrella Policy is not a "follow form" policy; rather, it is a stand-alone "umbrella" policy—separate and apart from the Primary Policy—which contains its *own* insurance terms, conditions, and exclusions.  (*See* Doc. 38-3).[5]  JBBOC does not and cannot point to any language in the Policy that would support this conclusion nor can it cite to any case law supporting a complete dismissal of clear policy language simply because, according to JBBOC, it is the general "nature" of umbrella policies to provide coverage excess of primary policy limits.   In effect, JBBOC is arguing that, based on the reasonable expectations doctrine, Montana courts should nullify every exclusion in every umbrella policy, and should find that every umbrella policy fully follows the coverage provided by its underlying policies—which is contrary to basic contract law.  *See Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819, 829 (Wisc. 2012) (contrasting follow-form policies with

---

[5] *See Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819, 829 (Wisc. 2012) (stating that "following form" is an "insurance industry term of art that is typically understood . . . to suggest that [a policy] incorporates the terms of another underlying policy," and that following form policies "are typically very short, in that they simply state their adoption of underlying policy terms, usually without much else."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co., Inc.*, 272 F. Supp. 3d 1099, 1103 (D. Minn. 2017) (stating that an excess policy is a follow-form policy "if the excess policy includes language stating that it follows the same terms as the underlying policy, including definitions, conditions, exclusions and, as relevant to the case at hand, endorsements.").

stand-alone excess policies and stating that even "following form policies regularly include terms and provisions that afford distinct coverage or exclusions from those provided in the underlying policy.").

Next, JBBOC contends that it had an objectively reasonable expectation of coverage because pollution is a major liability risk for JBBOC and because BITCO General offers (and has sold to other insureds), among other things, insurance coverage for pollution-related risk. (Doc. 46 at 27-28; Doc. 61 at 16-17).[6]   It is wholly unreasonable for an insured to expect automatic insurance coverage for pollution risk simply because BITCO General sells insurance for this risk. JBBOC's alleged expectation of coverage on this basis is belied by the fact that JBBOC chose to purchase **limited** pollution coverage under only the Primary Policy subject to a $100,000 sub-limit.   (*See* Doc. 38-2.)   Moreover, the Montana Supreme Court has rejected application of the reasonable expectations doctrine, where the insured alleged that it expected coverage for a risk simply because it is associated with the insured's operations.  *See, e.g.*, *Giacomelli*, 221 P.3d at 674 (where an insured lessee of a horse race track sought coverage arising out of injuries to horse jockeys, the court held that the insured's expectation that the CGL policy would cover injuries to jockeys was not reasonable, because the exclusion unambiguously expressed an intent to exclude coverage for jockeys injured while participating in horse races).

Finally, JBBOC contends that it had a reasonable expectation that the Umbrella Policy's Pollution Exclusion would follow the Primary Policy because the Pollution Exclusion contains the word "follow form" in its title.  (Doc. 61, at 17-18.)   Indeed, the Pollution Exclusion is provided by way of endorsement captioned "Pollution Exclusion – Follow Form." (Doc. 38-3, at

---

[6] JBBOC's evidence regarding the type of insurance products that BITCO General sells or markets to the general public is wholly irrelevant to the interpretation of the Umbrella Policy and its relevant terms, conditions, and exclusion.

pg. 40.)  However, contrary to JBBOC's contention, the Pollution Exclusion is not a "follow-form" endorsement, but rather it is an **_exclusion_** for pollution liability that contains an "underlying insurance" **_exception_** (or "follow-form **_exception_**).  *See Wadzinski*, 818 N.W.2d at 829 (holding that an exclusion provided in an endorsement to a "stand-alone" umbrella policy was not a "following form" endorsement, and stating that such a conclusion made "**_little sense, as the term ["following form"] is one that is applied to policies as a whole, not to endorsements to a stand-alone policy_**.") (emphasis added).

Any expectation of coverage based solely on the title of the exclusion is inconsistent with the clear language of the exclusion.  Indeed, for an insured to expect coverage simply based on the title of the Pollution Exclusion, the insured would have to read the title of the exclusion and then completely ignore the language of exclusion itself, which is wholly unreasonable.

JBBOC has offered no basis in law or logic sufficient to meet its burden of proving that the reasonable expectations doctrine applies in this case.  Accordingly, the Pollution Exclusion applies to bar coverage for the underlying Clean-Up Costs.

### D.      **Alternatively, the Umbrella Policy Attaches Excess of $1 Million**

As set forth in BITCO General's briefs in support of its Motion for Summary Judgment—which are incorporated herein—even if the Court were to find that the Umbrella Policy provides coverage for the Clean-Up Costs, such coverage could only attach excess of $1 million.  Judge Magistrate Johnston did not have to address this alternative argument, given that the Court ultimately found that the Pollution Exclusion applies to bar coverage for the Clean-Up Costs.

In its Objection, JBBOC contends that the Court should not consider this argument because this issue is beyond the scope of this litigation "as defined by the pleadings."  (Doc. 61,

at 18-19.)  JBBOC, however, did not raise this argument in any of its prior briefs, and thus it is improper for JBBOC to raise this argument for the first time in its Objection.  Indeed, it is well established law that a district court is well within its discretion in barring arguments raised for the first time  on objections to  a Magistrate's findings  and recommendations *absent  exceptional circumstances*.  *Friends of the Wild Swan v. Christiansen*, 955 F. Supp. 2d 1197, 1201 (D. Mont. 2013), *aff'd sub nom.*, 767 F.3d 936 (9th Cir. 2014) (citing *Greenhow v. Secretary of Health & Human Services,* 863 F.2d 633, 638–39 (9th Cir. 1988), *overruled on other grounds*).  The Ninth Circuit Court of Appeals has stated that "[T]he Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate [judge], then another past the district court."  *Greenhow*, 863 F.2d at 638–39.  Accordingly, as this Court has noted, "[g]enerally, district courts do not consider legal issues not initially raised in a party's summary judgment motion when ruling on findings and recommendations."  *Friends of the Wild Swan*, 955 F. Supp. 2d at 1201.

Here, JBBOC had the opportunity to raise this issue in any of the three prior briefs it submitted to Magistrate Judge Johnston, but it failed to do so.  Accordingly, the Court should disregard JBBOC's argument.  *See Anderson v. Brodie*, No. CV 19-95-M-DLC-KLD, 2019 WL 6338133, at *5 (D. Mont. Nov. 27, 2019) (slip opinion) (noting that "the Court will not consider new legal arguments raised in the objections to a magistrate's findings and recommendations," and declining to reach an opinion on arguments plaintiff raised for the first time in his objections because Judge DeSoto had no opportunity to consider these "freshly-hatched" theories).[7]

---

[7] *See also Maguire v. Teletech Customer Care Mgmt.*, No. CV 11-149-M-DWM-JCL, 2011 WL 6826419, at *1 (D. Mont. Dec. 28, 2011) (declining to address a party's argument that Montana law applied because it was raised for the first time in the objection to the magistrate judge's findings and recommendations); *Marshall v. Chater*, 75 F.3d 1421, 1427 (10th Cir. 1996) ("Issues raised  for  the first time  in objections to  the magistrate judge's recommendation are

Moreover, the attachment issue is not beyond the scope of this litigation, as BITCO General's Complaint seeks a declaration that it has no obligation to defend or indemnify JBBOC, and the Umbrella Policy's attachment point could impact such an obligation.  (Doc. 1, at 8.) Further, in this litigation, JBBOC has repeatedly asserted that BITCO General has an obligation to indemnify JBBOC in excess of the Primary Policy's $100,000 sublimit and it argued that point in its prior response brief, and JBBOC never argued that the issue itself was beyond the scope of the litigation because this is clearly not the case.  (See Doc. 48, at 9-12.)  Moreover, JBBOC has not and cannot provide any legal authority supporting its claim that BITCO General cannot move on the attachment issue, simply because it was not specifically plead in the Complaint.

## III.   CONCLUSION

For all the reasons stated above, BITCO General respectfully requests that the Court accept in whole the Magistrate Judge's Findings and Recommendations, that the Court grant BITCO General's Cross-Motion for Summary Judgment and deny JBBOC's Cross-Motion for Summary Judgment, and that the Court enter an order finding and declaring that BITCO General has no duty to defend or indemnify JBBOC in connection with the Notice of Violation or any action by the DEQ in connection with the pollution event described therein.

DATED this 20th day of February, 2020.

   /s/  Gustavo A. Otalvora
John A. Husmann
Gustavo A. Otalvora

---

deemed waived."); *Robb Evans & Associates, LLC v. United States*, 850 F.3d 24, 35-36 (1st  Cir. 2017) ("the law is settled that a litigant must put its best foot forward before a magistrate judge, and cannot introduce new arguments for the first time on the district court's review of the magistrate judge's ruling or recommendation").

BATESCAREY LLP
191 N. Wacker
Suite 2400
Chicago, IL   60606
Telephone: (312) 762-3100
Facsimile:  (312) 762-3200
Email: jhusmann@batescarey.com
Email: gotalvora@batescarey.com


    /s/  Jesse Beaudette
Jesse Beaudette, Esq.
Ryan T. Heuwinkel, Esq.
BOHYER, ERICKSON, BEAUDETTE & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana 59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email: mail@bebtlaw.com

**_Attorneys for Plaintiff_**

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)(2)(E)**

This brief complies with the type-volume limitation of Local Rule 7.1(d)(2)(E).   This brief contains 5,434 words, excluding the caption, table of contents, table of authorities, certificate of compliance, and certificate of service.

## **CERTIFICATE OF SERVICE**

I, the undersigned, a representative of the law firm of BatesCarey LLP, hereby certify that I served a true and complete copy of the foregoing *Response to JBBOC's Objections to the Magistrate's Findings and Recommendations* on the following persons by way of the CM/ECF filing system:

1.      Clerk, U.S. District Court

2.      James G. Hunt
        HUNT LAW FIRM
        310 E. Broadway St.
        Helena, MT 59601

3.      Gregory S. Munro
        Attorney at Law
        3343 Hollis St.
        Missoula, MT 59801

        ***Attorneys for Defendant J. Burns Brown Operating Co.***

DATED this 20th day of February, 2020.


                                        ____/s/  Gustavo A. Otalvora____
                                        John A. Husmann
                                        Gustavo A. Otalvora
                                        BATESCAREY LLP
                                        191 N. Wacker
                                        Suite 2400
                                        Chicago, IL   60606
                                        Telephone: (312) 762-3100
                                        Facsimile:  (312) 762-3200
                                        Email: jhusmann@batescarey.com
                                        Email: gotalvora@batescarey.com

                                        ***Attorneys for Plaintiff***

2419700