IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| BITCO GENERAL INSURANCE CORPORATION,<br><br>        Plaintiff,<br><br>vs.<br><br>J. BURNS BROWN OPERATING CO.,<br><br>        Defendant. | CV 18-87-GF-BMM-JTJ<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS |

Plaintiff BITCO General Insurance Corporation (BITCO) brought this action seeking a declaration that an umbrella insurance policy that BITCO issued to Defendant J. Burns Brown (J. Burns) does not cover property damage caused by J. Burns. (Doc. 1 at 8-9.) BITCO and J. Burns each moved for summary judgment. (Docs. 43 & 45.)

Judge Johnston issued Findings and Recommendations on January 24, 2020. (Doc. 60.) Judge Johnston determined that the umbrella insurance policy does not provide coverage for the property damage caused by the pollution at issue in this case. (Doc. 60 at 8.) Judge Johnston recommends that the Court grant BITCO's Motion for Summary Judgment (Doc. 43) and deny J. Burns's Motion for

1

Summary Judgment (Doc. 45). (Doc. 60 at 8.) J. Burns filed objections to Judge Johnston's Findings and Recommendations on February 7, 2020. (Doc. 61.) BITCO filed a response. (Doc. 62.) The Court conducted a hearing on J. Burns's objections April 14, 2020. (Doc. 68.)

## BACKGROUND

The parties do not dispute the material facts. (Doc. 38 at 6.) J. Burns operates an oil and gas business in northcentral Montana. An oil-well production site operated by J. Burns inadvertently released approximately 238 barrels of crude oil and 1,200 barrels of production water into a tail-water of the North Chinook Reservoir in Blaine County, Montana, in March 2017. The spill affected almost five acres of upland and wetland areas. The Montana Department of Environmental Quality demanded that J. Burns pay the clean-up and remediation costs associated with the oil spill, which may exceed $1,000,000.

Two BITCO liability insurance policies insured J. Burns when the oil spill occurred: a Commercial Lines Policy (Primary Policy) (Doc. 7-1); and a Commercial Umbrella Policy (Umbrella Policy) (Doc. 38-3). The Primary Policy's "Contamination or Pollution Coverage" endorsement covered clean-up and remediation costs associated with the spill. (Doc. 7-1 at 44.) The Primary Policy's pollution-coverage limit totaled $100,000. (*Id.*)

BITCO accepted coverage under the Primary Policy and paid the pollution-coverage limit of $100,000. (Doc. 38 at 5-6.) J. Burns requested that BITCO provide further coverage under the Umbrella Policy. (*Id.* at 6.) The Umbrella Policy's liability limit totals $1,000,000, subject to a $10,000 self-insured retention. (Doc. 38-3 at 6.) BITCO filed this action after receiving J. Burns's demand for coverage under the Umbrella Policy. (Doc. 38 at 6.)

Judge Johnston determined that the Umbrella Policy does not provide coverage for the property damage caused by pollution at issue in this case. (Doc. 60 at 8.) J. Burns objects to Judge Johnston's Findings and Recommendations. (Doc. 61.)

## DISCUSSION

The Court reviews de novo those Findings and Recommendations to which a party timely objected. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which the party did not specifically object. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

### I. THE POLLUTION POLICY IS CLEAR AND UNAMBIGUOUS

J. Burns objects to Judge Johnston's finding that BITCO's pollution exclusion, with its stated exception, is clear and unambiguous (Doc. 60 at 7). (Doc.

3

61 at 2.) An ambiguity exists in an insurance contract when the contract remains reasonably subject to two different interpretations. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 865-55 (Mont. 2013); *Jacobsen v. Farmers Union Mut. Ins. Co.*, 87 P.3d 995, 997-98 (Mont. 2004). The Court construes ambiguities in favor of the insured and against the insurer. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000). The Court construes narrowly coverage exclusions "because they are contrary to the fundamental protective purpose of an insurance policy." *Id.* The Court determines whether an ambiguity exists by viewing the insurance contract through the eyes of a consumer with average intelligence, not one trained in the law or insurance business. *Barnard Pipeline, Inc. v. Travelers Property Cas. Co. of America*, 3 F. Supp. 3d 865, 870 (D. Mont. 2014).

The Umbrella Policy provides a broad grant of liability coverage. The Umbrella Policy states that BITCO will reimburse J. Burns for the "ultimate net loss in excess of the retained limit because of . . . property damage caused by an occurrence which takes place during the policy period." (Doc. 38-3 at 8.) The Umbrella Policy defines the "retained limit," in pertinent part, as, "[t]hat amount of underlying insurance applicable to any claim . . . whether such underlying insurance is collectible or not." (Doc. 38-3 at 30.) "Property damage" is "[p]hysical

4

injury to tangible property, including all resulting loss or use of that property." (Doc. 38-3 at 30.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 38-3 at 29.) The Umbrella Policy would provide coverage for property damage caused by pollution if the Umbrella Policy did not contain an applicable exclusion.

The Umbrella Policy contains a pollution exclusion, however, that bars coverage. The Umbrella Policy generally provides that BITCO will not provide insurance coverage for property damage caused by pollution: no coverage exists for property damage "arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (Doc. 38-3 at 40.) The Umbrella Policy provides one exception to the pollution exclusion.

The Umbrella Policy states that the pollution exclusion does *not* apply when insurance for the property damage caused by pollution "is provided by 'underlying insurance' at the limits shown in the schedule of 'underlying insurance.'" Coverage for the property damage "is subject to the same limitations as the 'underlying insurance.'" (Doc. 38-3 at 40.) The Umbrella Policy's Pollution Exclusion requires the Court to analyze the meaning of "underlying insurance."

The Umbrella Policy defines "underlying insurance" in two separate ways. The Umbrella Policy first defines "underlying insurance" as all coverage "afforded

5

under insurance policies designated in the schedule of 'underlying insurance' on the Declarations Page of [the Umbrella Policy]." (Doc. 38-3 at 31.) The Umbrella Policy also defines "underlying insurance" as "any other insurance available to the insured." (*Id.*) This "underlying insurance" available to the insured includes any policies issued to renew or replace these policies during the policy period that provide the following coverage: (a) at least the same limits of insurance; and (b) at least the same coverage. (*Id.*)

      The Court must view the insurance contract through the eyes of a consumer with average intelligence, rather than one trained in the law or insurance business. *See Barnard Pipeline*, 3 F. Supp. 3d at 870. The Court concludes that the Umbrella Policy's pollution exclusion, and its exception, are clear and unambiguous. The Umbrella Policy provides no coverage for property damage caused by pollution unless the following criteria have been met: (1) the insured has an insurance policy that is referenced in the Umbrella Policy's schedule of underlying insurance; (2) this referenced insurance policy provides coverage for property damage caused by pollution; and (3) this referenced insurance policy provides coverage for property damage caused by pollution at a coverage limit that equals or exceeds the coverage limits listed on the Umbrella Policy's schedule of underlying insurance. (*See* Doc. 38-3 at 40.)

The Court has reviewed de novo Judge Johnston's findings that the Umbrella Policy's pollution exclusion, and its exception, are clear and unambiguous. The Umbrella Policy's schedule of underlying insurance refers to the Primary Policy. (Doc. 38-3 at 6.) This reference to the Primary Policy satisfies the first criteria. (Doc. 38-3 at 40.) The Primary Policy provides limited coverage for property damaged by pollution. (Doc. 7-1 at 44.) This coverage satisfies the second criteria. (Doc. 38-3 at 40.) J. Burns falls short on the third criteria. The Primary Policy provides coverage only for $100,000 for property damage caused by pollution. (Doc. 7-1 at 44.) This coverage amount falls well short of coverage limits of $1,000,000 listed on the Umbrella Policy's schedule of underlying insurance. (*See* Doc. 38-3 at 6.) The Court agrees with Judge Johnston and adopts his findings.

## II. THE REASONABLE EXPECTATIONS DOCTRINE

J. Burns also objects to Judge Johnston's failure to consider the "reasonable expectations" doctrine and its application to this case. (Doc. 61 at 2.) The reasonable expectations doctrine provides that the "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy

provisions would have negated those expectations." *Barnard Pipeline*, 3 F. Supp. 3d at 871 (quoting *Fisher*, 305 P.3d at 867).

The reasonable expectations doctrine does not apply where the policy's terms clearly demonstrate an intent to exclude coverage. *Fisher*, 305 P.3d at 867. This interpretation applies because "expectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'" *Am. Family Mut. Ins. Co. v. Livengood*, 970 P.2d 1054, 1059 (Mont. 1998).

The Umbrella Policy's pollution exclusion, and its exception, clearly demonstrate an intent to exclude coverage for damage caused by pollution unless the insured meets three very specific criteria. (*See* Doc. 38-3 at 40.) J. Burns's stated expectation that the Umbrella Policy would cover damage caused by a pollution event proves contrary to the Umbrella Policy's clear pollution exclusion and its exception. J. Burns's expectation cannot be interpreted as objectively reasonable under those circumstances.

The parties dispute whether the Umbrella Policy represents a "follow form" insurance policy. (Doc. 61 at 17-189; Doc. 62 at 17-18.) A "follow form" insurance policy typically follows the same terms as an underlying policy, including definitions, conditions, exclusions, and endorsements. *National Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Company, Inc.*, 272 F. Supp. 3d 1099,

8

1103 n.5 (D. Minn. 2017). J. Burns asserts that the Umbrella Policy's pollution exclusion "follows form" with the Primary Policy's underlying coverage. (Doc. 61 at 18.) BITCO views the Umbrella Policy's pollution exclusion as making clear that the Umbrella Policy does not cover damage caused by pollution in the same manner as the Primary Policy. (Doc. 62 at 17-18.)

The Umbrella Policy provides the pollution exclusion in an endorsement at the end of the Umbrella Policy. The Umbrella Policy titles this endorsement as "Pollution Exclusion—Follow Form." (Doc. 38-3 at 40.) The Umbrella Policy's pollution exclusion further provides that the pollution exclusion does not apply if the underlying insurance—here, the Primary Policy—covers the damage at the limits shown in the schedule of underlying insurance. (*Id.*) The Umbrella Policy and the Primary Policy contain different limits for pollution coverage. (Doc. 7-1 at 44; Doc. 38-3 at 6.) The Umbrella Policy's pollution endorsements and exclusions differ from those in the Primary Policy. J. Burns cannot assert a legitimate reasonable expectation that the Umbrella Policy followed the exact same terms as the Primary Policy, including the Primary Policy's endorsements and exclusions. *See National Union Fire Ins. Co.*, 272 F. Supp. 3d at 1103 n.5. The Umbrella Policy's pollution exclusion, and its exception, clearly demonstrate an intent to

exclude coverage. *See Fisher*, 305 P.3d at 867. The Court declines to apply the reasonable expectations doctrine. *See Barnard Pipeline*, 3 F. Supp. 3d at 871.

The outcome would not change even if the Court were to apply the reasonable expectations doctrine. The district court in *Barnard Pipeline* relied on the doctrine in construing a term against the insurer. There the policy had failed to define the term "structure." *Barnard Pipeline*, 3 F. Supp. 3d at 872. The parties disputed whether a company's work to prepare a right of way for the installation of a pipeline had transformed the right of way into a "structure" as contemplated by the policy. *Id.* The policy's failure to define "structure" entitled the district court to look to dictionary definitions. *Id.* The district court noted that Black's Law Dictionary defines "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Id.* (quoting Black's Law Dictionary 1559 (9th Ed.)). The district court concluded that the excavated right of way could not be excluded from the general category of things falling within the definition of "structure." *Id.* at 872.

The Umbrella Policy's Pollution Exclusion intends to exclude coverage. It would not be reasonable for a consumer to purchase $100,000 of pollution coverage under a comprehensive general liability policy and expect an umbrella policy to provide ten times that coverage unless explicitly stated. The Umbrella

10

Policy's Pollution Exclusion applies, as the only "underlying insurance" at issue here—the Primary Policy—provided only $100,000 in pollution coverage.

The Court reviewed the remainder of Judge Johnston's Findings and Recommendations for clear error. The Court finds no error.

Accordingly, **IT IS ORDERED** that:

1. Judge Johnston's Findings and Recommendations (Doc. 60) are **ADOPTED IN FULL**.

2. BITCO's Motion for Summary Judgment (Doc. 43) is **GRANTED**.

3. J. Burns's Motion for Summary Judgment (Doc. 45) is **DENIED**.

4. The Clerk is directed to enter judgment accordingly.

DATED this 6th day of May, 2020.

_____
Brian Morris, Chief District Judge
United States District Court